**UNITED STATES v. MESERVE.**
**No. 6212.**

Circuit Court of Appeals, Ninth Circuit.
Oct. 27, 1930.

550

George Neuner, U. S. Atty., and Livy Stipp, Asst. U. S. Atty., both of Portland, Or., and William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, James T. Brady, Asst. Gen. Counsel, U. S. Veterans' Bureau, and Edward Irvin Burns, Atty., U. S. Veterans' Bureau, all of Washington, D. C.

Hugh E. Brady, of LaGrande, Or., and Wilber Henderson, of Portland, Or., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

WEBSTER, District Judge.

 Appellee brought suit on a policy of war risk insurance held during his lifetime by her husband and intestate, George B. Meserve. From a verdict and judgment in her favor, the government has appealed. The sole question presented for decision is whether there was sufficient evidence of total and permanent disability to warrant the submission of the case to the jury. Meserve was honorably discharged from the army on August 19, 1919, and the insurance policy in suit lapsed for nonpayment of premium on October 1, 1919. It was necessary, therefore, for appellee to establish at the trial that the insured became totally and permanently disabled on or prior to the last-mentioned date. The complaint alleges that the insured contracted tuberculosis while in the service of the government and by reason thereof was totally and permanently disabled from and after August 19, 1919, the date of his discharge, and that thereafter on October 21, 1928, he died of that disease. Total disability within the meaning of the policy is any disability of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation, and such disability is deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. The principal insistence of the appellant is that the unchallenged work record of the insured after his discharge from the service shows conclusively that Meserve was not permanently and totally disabled until long after the expiration of his insurance. Prior to entering the military service the insured was employed as a freight brakeman on the Oregon-Washington Railroad & Navigation Company, and very shortly after his discharge he returned to that employment and worked therein from September 2, 1919, until October 28, 1921, a period of 26 months, and thereafter worked irregularly and intermittently as a taxicab driver during a part of 1922 and 1923. During the 26 months in which he was in the service of the railroad company in the capacity of brakeman he received in wages $5,275.06. His rate of pay during this time was $5.59 per day. Had the insured worked eight hours per day during every day of this period at $5.59 per day he would have earned $4,404.92. Allowing time and a half for overtime it would have been necessary for the insured to have worked approximately 104 overtime days during the 26 months' period in order to account for the difference between the total wages actually received by him and the amount of his straight wages for an eight-hour day. It should be noted in this connection that the insured's compensation was based on either an eight-hour day or 100 miles of travel, whichever was the greater. This testimony, standing alone and unexplained, would seem to indicate rather conclusively that the insured during the 26 months' period referred to was not totally and permanently disabled. From the record before us, however, it will not do to consider this proof abstractly, but there must be taken into consideration additional facts and circumstances which we believe shed material light upon the actual condition of the insured. The question is not what the railroad company's pay roll shows; it is what was the physical condition of the insured at the time. The record facts have no mysterious convincing force which forecloses their being explained and ameliorated by the proof of attendant and surrounding circumstances and conditions. There was substantial evidence submitted in behalf of the appellee tending to establish the following facts:

After entering the military service Meserve was sent to Siberia and remained there from September until February of the following year, when he returned to San Francisco and entered the Letterman General Hospital. While in Siberia he became ill, suffering probably from pneumonia, and it is shown that this illness rendered him susceptible to pulmonary tuberculosis. He remained in the hospital undergoing treatment until his discharge therefrom on August 6, 1919, at which time, by direction of the commanding officer in charge of the hospital, a letter was sent to the insured's mother, which in part reads: "I beg to inform you that your son is now about to be discharged and every effort made for his welfare. His condition at the present time I am creditably informed is an arrested form of tuberculosis, which un-

der favorable conditions of climate and work such as has been outlined for him would bring a return to health."

It will be seen, therefore, that Meserve was afflicted with tuberculosis at the time of his discharge from the army. In May, 1919, Meserve was released from the hospital for a few days on furlough and returned to his home. At that time he was much thinner than when he left for the service and looked "peaked." He was stoop-shouldered and had a cough, suffered from shortness of breath, and wanted to rest practically all the time. He was suffering from stomach trouble, being hungry but unable to eat because of nausea. When his wife next saw him, on August 21, 1919, two days after his discharge, his condition was worse. He had lost more weight, his face appeared drawn, he coughed more, protecting his chest while in the act of coughing, was more noticeably stooped, and on trying to play ball spat up blood. In September following he went back to his position as brakeman, which had been held open for him during his service in the war. The conductor of the train to which the insured was assigned, because he realized the changed condition of Meserve, selected for him the position of flagman on the train, that position involving the least exacting manual labor. It appears that the duties of a flagman consist largely in protecting the rear end of the train while it is standing still outside yard limits. When the train is in the act of slowly pulling out he lines up the switch and then runs and boards the train. While the train is in motion he stays in the caboose watching the train's movement. If for any reason the air brakes refuse to work it is his duty to set the hand brakes on the rear end of the train. Very frequently, however, Meserve's fellow trainmen would do this work for him because, as they testified, he was not physically able to do it himself. The run to which he was assigned was considered an unusually easy one. The trains on which he worked operated both ways out of LaGrande, Or., and a great deal of the time Meserve was "deadheading", that is, riding as a passenger from one point of his work to another. During this period of deadheading, however, his wages went on precisely as though he were actually at work as a brakeman. It was noticeable to Meserve's fellow workmen after he returned to the railway service that he was very much changed. He was not so fast in his movements, took less interest in his task, was lacking in energy, and appeared to be languid. It also appears that he took frequent layoffs by missing a run, and rested up. The conductor under whom Meserve worked suspected that he had tuberculosis, and, while he considered him physically able to work, did not believe that he could work continuously. His wife testified that after returning from the service he had not been home more than a month or six weeks when he had a spell of sickness characterized by vomiting; that frequently, against her advice, he would insist on going to work because he was extremely anxious to maintain his home; that when at home off duty he spent his time resting, refusing to go out socially, but preferring to remain in the house; that after quitting the railroad he had a protracted illness and did not do anything from October, 1921, until the next spring or fall. Some time in 1922 he tried to work as a taxicab driver at LaGrande, this beginning probably in June or July of that year. He worked irregularly and intermittently in this employment, but after a short time broke down and went to California. During this work he never drove the taxi at night and did not earn sufficient to support his family. In consequence of his condition his wife was compelled to go to work to assist in earning a living. After going to California he was in government hospitals at different times, both at Livermore and San Bernardino. After arriving in California his condition rapidly grew worse and his coughing spells were of longer duration; he was rapidly growing weaker and did not attempt to work at any occupation at all; he appeared to be tired and was not able even to help with the housework. On October 21, 1928, he died in the hospital at San Bernardino, and prior to his death had hemorrhages.

From the entire record there is little room for doubt that at the time of Meserve's discharge from the army he was suffering from pulmonary tuberculosis, which was only temporarily arrested in its progress. On returning to his work his physical condition was such that every possible thing was done by his wife and his fellow railroad laborers to make it possible for him to earn a livelihood. He was not only assigned to the easiest run available, but he was given the lightest task on his train, and even then his fellow workmen felt called upon to perform a large portion of his labors for him because of his physical condition. What appears to be long hours of service and many continuous days was made up in considerable part of riding in a caboose while the freight train was in motion, and in deadheading from point to point as a passenger when little or no manual la-

bor was required of him. He exhibited all of the usual indications of tuberculosis, and after the expiration of 26 months with the railroad left its service. After a protracted illness he undertook the light work of driving a taxicab, which resulted in failure. This was followed by a complete physical breakdown, requiring him to seek a more congenial climate. On going to California he rapidly grew worse, being frequently in different hospitals, and before his death became well-nigh helpless.

■ We are not concerned with the relative weight and convincing force of the testimony offered in behalf of the respective parties. The question we are called upon to deal with is whether there was any substantial evidence from which the jury would be warranted in finding total and permanent disability as alleged. We feel that it would be giving to the work record a weight and force as a matter of law, which in the light of the attending circumstances it does not have, to say that there was no substantial proof in support of the verdict. While the period of work in this case is somewhat longer than it was in the case of United States v. Sligh (C. C. A.) 31 F.(2d) 735, the attending circumstances shedding light upon the nature and character of the service are much stronger in this case than they were in that. It appears that at one time the insured wrote a letter in which he said that during the time he was working for the railway company he was in good health; in fact, had never felt better in his life. This letter also must be considered in the light of the circumstances under which it was written. It seems that Meserve had been reinstated on a beneficiary certificate in the Brotherhood of Railway Trainmen; that at that time he had made certain representations concerning his state of health; later the Brotherhood had denied liability to him because it was claimed that he had tuberculosis and had withheld that fact from the Brotherhood. The letter was written in an effort to clear himself of this

imputation of fraud, and in doing so he made the statement concerning his condition to which we have adverted. Whether the statement was that of a fact or was prompted by other motives easily conceivable is not a question of law for a court, but a question of fact for a jury. The appellee is entitled not only to the most favorable aspect of the evidence which it will reasonably bear, but is also entitled to the benefit of such reasonable inferences as arise out of the facts proved. It seems to us, therefore, that the jury might very well have believed that Meserve was never during his period of service with the railroad company in such physical condition as to enable him to work, but that through friendship and sympathy on the part of his colaborers he was able to remain in the service and draw pay because his fellow trainmen were volunteering to perform the arduous portion of his task. The testimony adduced easily suggests that without this friendly and sympathetic assistance Meserve would have fallen by the wayside very much sooner than he did. The jury may also have believed that his effort in such circumstances to perform labor was prompted by an overweening desire on his part to support his family and to maintain his home at a time when he was physically unable to work and should not have attempted to do so. The outcome of the effort put forth by him is strong corroboration of this conclusion.

It would extend this opinion to inordinate length to attempt to set forth in minutia of detail all the testimony pertaining to Meserve's physical condition during the time he was in the employ of the railroad company, but a careful perusal of the record in its entirety has led us to the conclusion that the trial court did not err in submitting the case to the jury, and that its verdict should not be disturbed.

Affirmed.

WILBUR, Circuit Judge, concurs.