**126**

Mary Connor Myers, of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and John Laurence Hurley, Sp. Asst. to U. S. Atty., both of Boston, Mass., and J. Frank Staley and W. Clifton Stone, both of Washington, D. C., on the brief), for the United States.

George C. Sweeney, of Gardner, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

The single question presented by this appeal is whether the District Court erred in accepting the verdict of the jury, that Harry G. Godfrey was permanently and totally disabled prior to July 31, 1919, when his policy lapsed. Godfrey enlisted April 18, 1918; at the front, in France, shortly before the Armistice (November 11, 1918), he had an attack of influenza, and received a dose of old chlorine gas in a cellar hole. He then started to cough, and continued to cough increasingly, until he died of tuberculosis on April 23, 1930, after the trial, but before the judgment in this case. Under presumably correct instructions (the charge is not reported), the jury found that he was totally and permanently disabled on June 28, 1919. On motion for a new trial, the learned District Judge said:

"I have carefully considered the evidence as shown by the transcript of record furnished me and am of the opinion that defendant's motion must be denied.

"The evidence tended to show the plaintiff, Harry G. Godfrey, when he entered the military service was in good physical condition; that when he returned and was honorably discharged from service he was pale and haggard and had a 'terrible hacking cough.' He was very irritable. He had a wife and child. Within a few days after he returned from the service he went to work, but was not able to continue for more than a few weeks when he took a vacation and went to Vermont where he remained for about one month. He did not improve. He continued to cough, lose weight and color and had night sweats. For a few weeks he worked for Goodwin's Last Company, but did not continue for very long, and complained of pains in his chest. He consulted a physician in 1919 or early in 1920. Just what diagnosis was made by the physician who treated him does not appear. The physician's testimony was not available. Plaintiff's cough and pleurisy pains continued, and on March 10, 1925, a sputum test was made, which showed positive for tuberculosis. Plaintiff began to lose his voice, which condition, together with the cough and pains, continued progressive until he was sent to the hospital at Rutland for treatment for tuberculosis, where he remained up to the time of the trial.

"The Government relies upon testimony to the effect that on October 14, 1919, he began work for the Cheever Laundry in Lynn and, with the exception of a few months heretofore noted, continued work until February 3, 1927, earning from thirty to thirty-five dollars per week. While it appears that he lost considerable time, Mr. Cheever, head of the laundry, testified that nothing was deducted for such loss of time.

"In his argument to the jury defendant's counsel contended that a man who was capable of earning from thirty to thirty-five dollars a week for a period of several years

after his insurance policy had lapsed was not 'totally and permanently disabled' within the meaning of the War Risk Insurance Act (as amended [38 USCA § 516]).

"It seems to me that the evidence before the jury tended to show that the plaintiff had active tuberculosis from the time of his discharge from the army which continued to be progressive until he was sent to the hospital at Rutland, Massachusetts.

"A man with active pulmonary tuberculosis requires absolutely rest treatment and may very properly be considered permanently and totally disabled unless his disease is arrested, which never occurred in the instant case.

"The case is not unlike the facts in the case of United States v. Sligh (C. C. A.) 31 F.(2d) 735.

"The defendant's motion is denied."

The government's main contention is grounded on the fact that Godfrey was in receipt of wages from a former employer until 1927. But it does not follow that he earned his wages. Mr. Cheever, his employer, seems to have been an unusually considerate employer. For the evidence is undisputed that "when operating a car he would have spells of coughing; that driving to and from work the plaintiff would have to stop his automobile, get out and sit on the running board and cough it out, throwing up his breakfast; * * * that getting to work in the morning the plaintiff would have to sit in the office and rest until nine or half past and lots of times could not go out at all in the forenoon." "He did not work steady." "He also had night sweats." In 1922–24 he went to the hospital for treatment.

In brief, the evidence warranted the jury in finding that, under an apparently sympathetic and merciful employer, he attended, spasmodically, to his duties and received (probably not fully earned) pay therefor; that if he had had less grit he would have left work and rested, as the District Court properly found was his needed treatment.

We think the evidence fully warranted the jury in finding that his case falls within Reg. No. 11, as interpreted by this court in Ford v. United States, 44 F.(2d) 754, 755, where we said: "If such claimants are able to follow gainful occupations only spasmodically, with frequent interruptions due to disability, they are entitled to recover under the act."

The evidence not only showed that Godfrey did follow "only spasmodically" his "gainful occupation," but that he was "able" to do less than he actually did—that he went to his place of employment when (as the jury may well have found) he was not "able" so to do.

The evidence is persuasive that Godfrey was a war victim. He was entitled to the most favorable view of the evidence. Gray v. Davis (C. C. A.) 294 F. 57; Heisson v. Dickinson (C. C. A.) 35 F.(2d) 270; B. & A. R. R. v. Jones (C. C. A.) 36 F.(2d) 886. To hold him remediless because he tried, manfully, to earn a living for his family and himself, instead of yielding to justifiable invalidism, would not, in our view, accord with the treatment Congress intended to bestow on our war victims. United States v. Cox (C. C. A.) 24 F.(2d) 944; White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530.

The judgment of the District Court is affirmed.

Circuit Court of Appeals, Fifth Circuit.
Feb. 12, 1931.