**OHIO GALVANIZING & MFG. CO. v. MERCURY MFG. CO.**

No. 5558.

Circuit Court of Appeals, Sixth Circuit.

May 11, 1931.

Nichol M. Sandoe and L. E. Varney, both of New York City (Emery, Booth, Varney & Whittemore and Manvel Whittemore, all of New York City, on the brief), for appellant.

Carlton Hill and Charles W. Hills, both of Chicago, Ill. (Charles W. Hills, Jr., and M. R. Chambers, both of Chicago, Ill., on the brief), for appellee.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge.

Infringement suit based upon reissue patent No. 16,157, granted to Hinshaw, September 1, 1925, for a trailer truck and assigned to appellee. Claims 2, 5, 7, 8, and 10 are in issue. Claims 2 and 8 are printed in the margin.[1] The defenses were: (1) That all claims are invalid; (2) that claim 10, if valid, is not infringed; (3) that the reissue patent is not supported by claims patentably different from those in the original application; and (4) that appellee is estopped to assert claims 2, 5, 7, and 8 against appellant. The District Judge held all claims valid and infringed.

We think it necessary to consider only the question of invention.

The claims are combination claims. In claim 2 the elements are: (1) A substantially rectangular T-iron frame having vertically disposed upper and lower flanges; (2) a flange extending horizontally inward at the side and end portions of the frame; (3) longitudinally extending connecting bars each having a horizontal flange and a vertical flange extending downward from such horizontal flange, the horizontal flange of said bars being connected to the horizontal flange at the opposite end portions of said frame; (4) caster wheel supports each connected with the horizontal flange of one of said bars and with the horizontal flange of the adjacent side portion of the frame and lying approximately in the horizontal plane of said flanges; and (5) a platform resting on the upper surfaces of said horizontal flanges.

Claim 5 has the additional element of caster wheels with bearings on the under side of its supporting plates.

The distinctive features of claim 7 are brackets "separately connected with the horizontal flanges at the opposite side portions of said frame and extending obliquely downwardly and inwardly from the side portion with which each is respectively connected, a unitary axle having its under portions mounted in said brackets" and "wheels mounted on said axle between said brackets."

Claim 8 has the additional feature of a spacer sleeve on the axle between the wheels and hangers connecting the longitudinal bars and bearing upon the spacer sleeve for supporting the bars.

Claim 10 is for a frame comprising two U-shaped T-iron members connected at the end with the longitudinally extending bars.

Hinshaw's object was to provide a light, strong truck with a low platform more convenient for loading, and yet having comparatively large wheels so that it might be more easily and quickly hauled.

Unquestionably, wheels, casters, axles, brackets, frames, and platforms are all old, even in trucks.

Caster plates having ball bearings are

[1] "2. A truck comprising a substantially rectangular T-iron frame having vertically disposed upper and lower flanges, a flange extending horizontally inward at the side and end portions of the frame, longitudinally extending bars each having a horizontal flange, and a vertical flange extending downward from such horizontal flange, the horizontal flanges of said bars being connected to the horizontal flange at the opposite end portions of said frame, caster wheel supports each connected with the horizontal flange of one of said bars and with the horizontal flange of the adjacent side portion of the frame and lying approximately in the horizontal plane of said flanges, and a platform resting on the upper surfaces of said horizontal flanges."

"8. A truck comprising a substantially rectangular T-iron frame having a flange extending horizontally inward at the side and end portions thereof, brackets connected with the opposite side portions of said frame and extending downwardly and inwardly therefrom, an axle mounted in said brackets, wheels mounted on said axle, a spacer sleeve on the axle between said wheels, longitudinally extending bars each having flanges disposed horizontally and vertically, their horizontal flanges being connected with the horizontal flange at the end portions of said frame, hangers connected with said bars and adapted to bear against said sleeve for supporting said bars thereon, and a platform supported by the horizontal flange of said frame and by said bars."

likewise old. (Reichmann, No. 1,494,978, 1924.)

The prior art discloses various forms of trailer truck frames. These frames have been constructed of (1) timber with side and end sills morticed together; (2) of timber reinforced with metal; and (3) entirely of metal. Metal sills have been provided; some of tubular construction; others of channel iron; and still others of angle iron. They have been made of four pieces, as were the wooden sills, and joined at the corners, but in the Hinshaw trailer they were made in two pieces, U-shaped, and joined at the center of each end of the trailer. This particular two-piece feature was not new. The Standard Improved Truck Company of Chicago made such frames as early as 1915. However, Hinshaw's frame did embody one new feature— it was composed of T-iron (old in form) with the T-flange extending inwardly to support the platform. Such feature is found in modified form in patent to Richards, No. 754,610, 1904 (a vehicle frame) but not for the purposes of platform or floor support.

Longitudinally connecting bars are also old in trailer construction. If the frames or sills of the trailer were of timber, the bars were likewise of timber, but, if the frames were metal, the bars were of metal. Some of these bars were of unitary construction and centrally located, as in Koehler, No. 1,-221,997, 1917. Hinshaw supplied two bars located and arranged as described in claims 2 and 5, but their location, number, and arrangement have their counterpart in the Standard Improved Truck Company's trailer of 1915, above mentioned, and in Allen and Todd, No. 1,437,212, 1922, and Reichmann, No. 1,494,077, 1919. The new thing in Hinshaw's longitudinal connecting bar is that he used an angle iron (old in form) with the horizontal flange extending inwardly and the vertical flange downwardly. However, the Standard Improved Truck Company in 1918 effected the same purpose and result by the use of a channel iron for the longitudinal bars with the channel flanges extending outwardly.

In the prior art trailers were constructed with front wheels upon axles as in the ordinary vehicle, the frame resting upon bolsters; others with a single caster wheel centrally located near the front of the frame; others with two casters having stem supports, one on either side of the median line; and still others with two casters supported by plates having ball bearings and attached to longitudinally connecting bars upon the inside and to the sill or frame upon the outside. All of these features appear collectively in Reichmann No. 1,494,078, 1924, and also in the Standard Improved Truck Company's product of 1918, as illustrated by appellant's blueprint Exhibit No. 1 and in its Exhibit No. 13, being an application to the Commissioner of Patents for a patent for "trailer truck." It is clear that Reichmann accomplished one of the purposes sought by Hinshaw; that is, he mounted a relatively large caster wheel close up under the platform.

The spacer sleeve and the hangers supported thereon and connecting with the longitudinal bars of the patent in suit are not new. The hangers appear in the Standard Improved Truck Company's trailer above referred to (see appellant's blueprint Exhibit No. 1) and the spacer sleeve is found in Peterson No. 1,143,134, 1915.

In the prior art construction, the brackets supporting the rear wheels extended downward vertically from the sill or frame. In Hinshaw, in order that they may not collide with objects past which the truck is moving, these brackets are made to extend downwardly, obliquely, and inwardly to the ends of the axle. The last feature, though old in practice, appears to be new in trailers, but to shorten the axle and connect it with the frame by a bracket extending downward obliquely instead of vertically is certainly nothing more than mechanical skill.

The T-iron frame with the T-flange extending inwardly and the angle iron connecting bar with the flange extending downwardly are, in addition to the obliquely extending brackets, the only novel features of the Hinshaw patent, but adding them to the combination of other elements already well known to the art, as was done by Hinshaw, does not constitute invention. This patent should be classified with the second group described in Hug v. Lakewood Engineering Co., 7 F.(2d) 98, at pages 99, 100 (C. C. A. 6). Hinshaw produced a trailer which was perhaps somewhat lighter and more easily operated, but this was an improvement in form and degree only. It was not invention. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Adams v. Galion Iron Works & Mfg. Co., 42 F.(2d) 395, 397 (C. C. A. 6).

The decree is reversed, with instructions to enter a new decree dismissing the bill.