**McNALLY et al. v. UNITED STATES.**
**No. 9077.**

Circuit Court of Appeals, Eighth Circuit.
Sept. 11, 1931.

Peter S. Rask, of Minneapolis, Minn., for appellants.

Joseph W. Finley, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and John H. Fraine, Regional Atty., U. S. Veterans' Bureau, of Minneapolis, Minn., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

KENYON, Circuit Judge.

This is a war risk insurance case. Two actions were brought, one by Mary Ellen McNally beneficiary under the policy issued to Michael Joseph McNally, the other by Michael Peter McNally as administrator. The two were consolidated and tried as one case. Michael Joseph McNally entered the military service of the United States, June 6, 1918, and served until July 10, 1919. Then he was honorably discharged. He took out the usual government war risk insurance policy. This contract of insurance remained in force until midnight September 30, 1919. If he was totally and permanently disabled before that time, plaintiffs are entitled to recover. The question here is whether this should have been determined by the jury.

The trial court directed a verdict for the government and in its opinion, in passing on the motion, said[1]: "I think that the evidence would justify the conclusion and a verdict that he was totally disabled, that is, that he could not engage regularly in any substantially gainful occupation on September 30th, 1919, the day his policy lapsed; at least that he could not do that without impairing his health, so that I think there could be a finding in this case on the evidence, that he was totally disabled. If that were the only testimony I should have no hesitation whatever in submitting that question to you for your determination; but the fact that he was totally disabled on September 30th, 1919, did not give him any right under his policy because the policy provided that he must not only be totally disabled, but that his disability must be permanent."

[1] Orally.

The construction of the term "total and permanent disability" has been made clear by many decisions. There is no difficulty in determining its meaning as a matter of law. Its application to the particular facts of each individual case is not always easy. In U. S. v. Phillips, 44 F.(2d) 689, Blair v. U. S., 47 F.(2d) 109, and U. S. v. Le Duc, 48 F.(2d) 789, this court has discussed the meaning of the term "total and permanent disability." It is settled by the decisions of the courts that absolute incapacity to do any work is not a test of "total and permanent disability." As said in U. S. v. Sligh (C. C. A.) 31 F.(2d) 735, 736: "It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation."

If the disabled person cannot follow continuously a substantially gainful occupation, he is totally disabled, even though he does some work. Judge McDermott when on the District Bench well expressed the law in Wood v. U. S. (D. C.) 28 F.(2d) 771, 773, as follows: "I am of the belief that when, by reason of physical or mental disability, the insured is compelled to drop out of the ranks of the workers of the world, and stand by the side of the road and watch the world go by, there is liability under the policy. The insured may not be fastidious as to his employment; if, as a matter of fact he is able to do any honorable work, he is not disabled."

On the general subject, see U. S. v. Eliasson (C. C. A.) 20 F.(2d) 821; U. S. v. Golden (C. C. A.) 34 F.(2d) 367; U. S. v. Meserve (C. C. A.) 44 F.(2d) 549; U. S. v. Rasar (C. C. A.) 45 F.(2d) 545; Carter v. U. S. (C. C. A.) 49 F.(2d) 221; Kelley v. U. S. (C. C. A.) 49 F.(2d) 896, 897.

As the court directed a verdict against plaintiffs they are entitled to have the evidence and inferences therefrom most strongly construed in their favor. U. S. v. Godfrey (C. C. A.) 47 F.(2d) 126.

In view of another trial, we refrain from anything but a brief discussion of the evidence, expressing no opinion whatever, of course, as to its weight. Presented from the most favorable standpoint to plaintiffs, the testimony shows that decedent on November 1, 1918, while serving in the World War on the Verdun Front, was shot through the chest. He coughed blood for four days. He had always been a farm laborer on his parents' farm, had received an eighth grade education. When home in March of 1919, on a furlough, he was pale, stooped, emaciated, and could hardly walk. He had lost weight, had a cough, and blood stains were noticed on his handkerchief after coughing. The coughing was more severe during the night than the day. His weight had gone down from 155 pounds, prior to his enlistment, to 130 pounds in March. He was unable to do any work. He was discharged from the service in July, 1919, and returned home. He was then ill, pale, thin, walked with a stoop, and was very weak. His cough persisted, and his father testified that "perhaps it was worse." He would spit and cough up blood, and bloody sputum was noticed within a month after he returned home. He was anxious to work, and would attempt some little work for a few days, but would become sick. From October, 1919, to May, 1920, he was not able to perform any work. During the afternoons he would rest in bed. He had slight hemorrhages at times. The coughing, which was followed by bleeding from his throat, would be brought about by any kind of exertion. He was hospitalized at Minneapolis in the early part of September, 1920, and after that performed no real work. Between September, 1920, and the date of his death August 29, 1927, he was either hospitalized or at his father's home, able to do but little, if anything.

In the trial of the case, two doctors testified for plaintiffs—Drs. Powers and Fitzgerald. Appellants contend that the testimony of these doctors, coupled with the testimony of the lay witnesses, constituted substantial evidence sufficient to take the case to a jury.

Dr. Powers testified that he examined the insured in the late summer or early fall of 1919. The court asked him whether as a practical matter the insured could have engaged regularly in some substantially gainful occupation, and the doctor answered that he did not think he could. He further testified there was a reasonable certainty that this condition would continue throughout his life; that in July, 1919, when he made the examination, there was a dull clouded area as large as an apple in the base of the right lung; that at that time he made a possible or tentative diagnosis of tuberculosis. He testified that in his opinion, based on his examination and the hypothetical question propounded to him, and the definition of permanent and total disability, that McNally was "permanently and totally disabled" on July 10, 1919. On cross-examination he testified that the physical findings which led him to make a diagnosis of pulmonary tuberculosis

were in part the shadow in the right lung; the history of spitting blood, and the wound, and so on. The stage of tuberculosis in his opinion was the stage of consolidation which is the beginning of the area of the filling of the air sacs, and so on. He testified that tuberculosis was not an incurable disease, and that its progress can be arrested, dependent largely on the physical condition of the patient and his following the instructions of his doctor.

Dr. Fitzgerald testified that he examined the insured in November, 1919; that the diagnosis was emphysema pulmonary interlobular, adhesions of plura in right axillary region; that he examined him again in December, 1919, and the diagnosis was about the same. He examined him again during 1921, and found his general physical condition to be very poor. His diagnosis then was pulmonary tuberculosis, active. He was asked the question, based on the definition of permanent and total disability, his examinations, and the hypothetical question which covered the evidence we have before referred to, whether the disability was total and permanent, and he stated that in his opinion McNally was "permanently and totally disabled" on July 10, 1919. He had made reports while he was an examiner in the employ of the government as to McNally's case which differed from his opinion expressed in the trial of this case, but he did not have a complete history of the patient at the time of the examination on which his former opinion was based. He did not make a diagnosis of tuberculosis upon his first examination, and did not, at the time of his examination in April, 1920, consider his disability as permanent and total. He stated in examination by the court that he might think a man had tuberculosis but not diagnose it as such because of lack of sufficient positive findings to back it up, such as positive sputum. On being questioned as to his reasons for now stating that in July, 1919, there was reasonable certainty that McNally would not recover, the doctor said: "In the first place, he had a bullet through his lung and a discharging sinus afterwards, and from the history, this bullet must have passed through the lung, and in all probability there was an abscess. Coming after that, the hemorrhages, night sweats, loss of weight, dilation of lungs, shortness of breath, and all of those things—those are the things that I made this prognosis on." In 1919 he did not have the facts before him that he had at the time he testified. At the time he gave his findings to the Veterans' Bureau, he did not know of the night sweats and occasional raising of blood. At the time of his examination in the summer of 1920 he made the diagnosis of pulmonary tuberculosis. He testified that in November, 1921, the disease was pretty well advanced and the probabilities of arrest were not good.

Dr. Bacon, expert for the government, testified that, under proper and systematic treatment, the disease, even as far advanced as it was on December 13, 1922, might become arrested. He testified also that, "Well, with the amount of disease he exhibited here, he should never undertake any heavy labor. It should be light labor or clerical or inside occupation or work of some kind." The testimony of this expert is to the effect that, had the tuberculosis become arrested, the insured could never again have engaged in any heavy labor, which was the only thing he was fitted for by training and experience. Dr. Bacon's opinion that the insured might recover from the tuberculosis is of little effect in view of the insured's death. The force of a doctor's opinion that a patient will get well is weakened somewhat if the patient shortly thereafter die. That an operation is, from a medical standpoint, highly successful, is not particularly comforting to the relatives if the funeral of the patient quickly follows the operation. The effect of a disease is more convincing that it exists than the opinion of the doctor that it does not. Dr. Bacon testified that "an arrested incipient tuberculosis case should be able to do a full day's work." The tuberculosis here was not arrested and resulted in death.

In this case it is apparent that in September, 1920, the insured was afflicted with active tuberculosis. Was there substantial evidence to bridge the hiatus between September, 1920, and September, 1919? It is urged that the testimony of Drs. Powers and Fitzgerald in connection with other facts, was sufficient to enable a jury to say that total and permanent disability existed prior to September 30, 1919. That Dr. Fitzgerald had expressed other opinions at other times is not sufficient for a court to hold that his testimony cannot be substantial. A court in so doing invades the province of the jury. Twelve men are probably better qualified to pass on the veracity of experts than is one.

A case quite in point to this one is Mulivrana v. U. S. (C. C. A.) 41 F. (2d) 734. The court there said: "One of the physicians and surgeons at the Cushman Hospital examined and treated the appellant at various times between 1921 and 1923. He testified that in 1921 he treated the appellant for pul-

monary tuberculosis, active, and moderately advanced; that at that time he considered the appellant totally disabled from following any substantially gainful occupation, and was of opinion that the disability would continue throughout his life. A further examination of the appellant was made by the witness shortly before the trial, and his condition was found to be about the same, except the tuberculosis was more advanced. The testimony of this witness was corroborated by other medical testimony, based on examinations made from time to time thereafter, and by the testimony of lay witnesses who had worked and associated with the appellant. The testimony thus offered was ample to support a finding that the appellant was totally and permanently disabled as early as the date of the examination in 1921, and it only becomes necessary to bridge the gap between the date of this examination and the date when the policy lapsed. * * * The nature of the malady from which the appellant was suffering makes it reasonably certain that the condition found upon the examination in 1921 had existed for some period prior thereto, and the claim of the appellant is further fortified by the conclusive presumption that the disability was incurred while in the service."

U. S. v. Phillips, 44 F.(2d) 689, this court, is a case where the soldier was affected with active pulmonary tuberculosis, and is quite analogous to the case at bar. Answers of a doctor to hypothetical questions established plaintiff's condition. We there held that pulmonary active tuberculosis as there shown might constitute permanent and total disability.

In Malavski v. U. S. (C. C. A.) 43 F.(2d) 974, unless total and permanent disability existed prior to May 1, 1919, the policy had lapsed. From an examination made in 1921, a physician testified the soldier was affected with active tuberculosis, and that it could not have developed within less than one or two years. The court held that the evidence was substantial enough to make the question of permanent total disability in May, 1919, one for the jury.

In U. S. v. Meserve (C. C. A.) 44 F.(2d) 549, the question of pulmonary tuberculosis in a war risk insurance case is discussed, and the question of total and permanent disability is held one for a jury to determine.

█ It is not necessary to show that prior to September 30, 1919, a reasonable certainty existed that the disability was permanent. It must appear at some time prior to the determination of the case that the disability by September 30, 1919, was already so far progressed as to be permanent.

█ These policies of war risk insurance are entitled to liberal construction in favor of the soldier. Speaking of such insurance contracts, Justice Holmes in White v. U. S., 270 U. S. 175, 46 S. Ct. 274, 275, 70 L. Ed. 530, says: "All soldiers were given a right to it and the relation of the Government to them if not paternal was at least avuncular." See, also, U. S. v. Eliasson (C. C. A.) 20 F.(2d) 821; U. S. v. Cox (C. C. A.) 24 F.(2d) 944; U. S. v. Schweppe (C. C. A.) 38 F.(2d) 595.

█ We are satisfied that the question as to whether the insured prior to September 30, 1919, was totally and permanently disabled, should have been submitted to the jury.

█ Some minor questions are raised to which we briefly refer. A certain letter, Exhibit E, from the Director of the Veterans' Bureau, stating that McNally was not entitled to a total and permanent rating for compensation purposes prior to September 2, 1920, was offered in evidence, objection to which was sustained by the court, on the grounds that the same was immaterial. We think the court did not err, as this letter related entirely to ratings for compensation purposes. Warren v. U. S. (D. C.) 42 F.(2d) 755; U. S. v. Golden (C. C. A.) 34 F.(2d) 367.

█ Error is also urged in the admission of the signed reports of physicians of the Veterans' Bureau who had examined the insured. They related to the actual physical condition of the insured. Were these reports properly identified and sufficient foundation laid for their introduction, they would be admissible. U. S. v. Cole (C. C. A.) 45 F.(2d) 339; Runkle v. United States (C. C. A.) 42 F.(2d) 804. Here there seems to have been absolutely no foundations laid for their introduction; hence, we think they should not have been admitted. However, this error would not be of sufficient prejudice in view of this record to warrant a reversal of the case, and this is an error that doubtless can be corrected on the trial of the case.

The judgment of the District Court is reversed, and the case is remanded for further proceedings in harmony with this opinion.

Reversed and remanded.