## ALVORD v. UNITED STATES.
### No. 4050.

District Court, D. Massachusetts.
Dec. 24, 1931.

Shea & Garvey, of Springfield, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., of Boston, Mass. (by John Lawrence Hurley, Sp. Asst. U. S. Atty., of Boston, Mass.), for the United States.

BREWSTER, District Judge.

In this action the petitioner seeks to recover upon two policies of war risk insurance for $5,000 each, issued under the dates of February 6 and March 24, 1918, respectively. He was honorably discharged from the service on March 6, 1919, and on May 1, 1919, his policies lapsed for nonpayment of premiums.

The case presents the familiar question whether, during the life of the policy, the insured had become totally and permanently disabled.

Prior to his enlistment, the petitioner had learned the trade of an automobile mechanic. When he enlisted he was in good health. He was sent to France soon after his enlistment, and, after arriving in France, he was transferred to Company A, 101st Supply Train. His duties were driving and repairing trucks. In the course of his service he received two injuries to his hand, which left him with a hand somewhat deformed, but these injuries furnish no adequate foundation for a claim of total disability.

On August 13, 1918, he was driving a truck loaded with ammunition near the front line during an engagement with the enemy around Chateau-Thierry. He had been obliged to abandon his truck and had volunteered as a litter carrier. While rescuing the wounded, he encountered mustard gas and was severely burned in the face and also internally. He began to cough and choke and was, shortly after, sent to a hospital, where he received treatment. He has no continuous recollection of his hospital experiences, but remembers that he was transferred to Base Hospital No. 30 and later to Base Hospital No. 6 at Bordeaux, where he remained until after the Armistice. He was then brought to New York on a hospital ship and sent to a hospital at Camp Merritt, thence to Parker Hill Hospital in Boston, from which hospital he went to Camp Devens. After about 2 weeks there he was discharged.

According to their records, he was received at the several hospitals as a victim of gas, and his complaint was diagnosed then as chronic bronchitis, or bronchial catarrh. His eyes and ears had been affected and his face was burned, leaving scars which are still noticeable, but except for the chronic bronchitis he seems to have recovered from the effects of the attack.

There is no doubt that his bronchial troubles were induced by inhaling mustard gas, and ever since he was a victim of the gas he has had difficulty in breathing, has had spells of coughing, and after a time he became subject to hemorrhages of varying severity, some of which would leave him weak and unable to continue his work.

From the medical testimony, and in the light of subsequent events, I am satisfied that the disability was one which, back in 1919, gave no reasonable expectation of recovery. From the time of his discharge down to the present time, he steadily grew worse until 1928, when the government rated him as totally and permanently disabled.

The real controversy in this case is whether the evidence warrants the finding that petitioner's disabilities became total prior to May 1, 1919, the government contending that his subsequent employment was of such duration and of such regularity that it must defeat his right to recover on the contracts of insurance. The pertinent facts on this aspect of the case I find to be as follows:

Upon his discharge on March 6, 1919, this veteran returned to his home in Westfield, and some time in April of that year secured employment at his old trade of automobile mechanic in the Park Square Garage, where he continued until the fall of 1920. The evidence is conflicting as to the regularity of this employment, and no records of his time were produced. The petitioner testified that he was frequently obliged to lay off for a day or more at a time on account of his disability. His associates recall no lost time on account of illness, but all agree that he had spells of coughing, was short of breath, and his condition was so obvious that his fellow workmen raised a fund to send him to Colorado in the belief that a change of climate would improve his physical conditon. He went to Colorado Springs and stayed there and in New Mexico and Texas until early in 1921, when he returned to Westfield. During his absence in the West he did not work at any gainful employment. Upon his return he married, and in April, 1921, entered the employ of the Williams Auto Company as an automobile repair man. He was on the pay roll of this company for 54 weeks, during which time he was only able to work 16 full weeks. There were 4 full weeks when he did no work at all, and in the remaining 34 weeks he lost anywhere from a fraction of a day to 5 days, and was finally obliged to give up again and try another vocation.

The evidence is uncontradicted that during this period he was subject to frequent coughing spells, had difficulty in breathing, spit up blood, and, following these attacks, he was weak and obliged to lay off. For the time he actually worked he received 55 cents per hour.

His next employment of any consequence was with a market gardener. His testimony is that this employment was frequently interrupted on account of his disability.

On May 23, 1925, he went to work again as an automobile mechanic with Clifford Barrett, in Springfield, Mass. He remained there until October, 1927. He appears to have been carried on the pay roll until the week of October 29, 1927, although for two weeks previous he had been unable to work.

With the exception of the period between July 31, 1926, and March 7, 1927, the number of days of actual work is shown by his employer's books. During the 95 weeks covered by these records, the petitioner worked only 26 full weeks. He lost during the same period 8 full weeks, and during the period for which no records are available he was out for 6 months and unable to do any work at all. The records for the 61 remaining weeks show the petitioner was out anywhere from one to 5 days. While with Barrett he received for the time that he actually worked wages at the rate of 50 cents an hour for part of the time and 60 cents an hour for the remainder. During this employment his condition had not improved. He was still working under difficulties, with coughing spells, hemorrhages, and weakness, and his employer testified that he would not have kept him on his pay roll as long as he did had he not been a veteran.

Upon the advice of a physician, he gave up his work at Barrett's garage, and, except for two unsuccessful attempts to carry on, he has not since been engaged in any gainful employment, and at the time of the hearing he presented a case of total disability.

As the result of an examination September 9, 1923, Dr. George L. Schadt diagnosed his case as one of chronic bronchitis. The doctor testified that the veteran was suffering from the results of the mustard gas, and that his condition was undoubtedly aggravated by the arduous work which he had undertaken. In other words, that his activities connected with his employment had been detrimental to his health. The petitioner only knew the trade of a mechanic, and his education, training, and experience did not fit him for clerical work.

Upon this state of facts, has the petitioner established total disability prior to May 1, 1919?

The definition of total disability adopted by the Veterans' Bureau in regulations has been somewhat enlarged by the courts, which have, in several cases, held that, if the disability is such as to render the veteran unable to work at any employment for which he is fitted without detriment to his health or peril to his life, the disability is total within the meaning of the contract. United States v. Sligh (C. C. A.) 31 F.(2d) 735; United States v. Phillips (C. C. A.) 44 F.(2d) 689; .Knight v. United States (D. C.) 45 F.(2d) 202; O'Hora v. United States (D. C.) 49 F.(2d) 945.

Employment after the lapse of policy does not necessarily defeat the right of the insured to recover the benefits of the policy. Ford v. United States (C. C. A.) 44 F.(2d) 754; United States v. Godfrey (C. C. A.) 47 F.(2d) 126, 127; Kelley v. United States (C. C. A.) 49 F.(2d) 897. See, also, to the same effect in other jurisdictions: United States v. Eliasson (C. C. A.) 20 F.(2d) 821; United

States v. Sligh, supra; Knight v. United States, supra; Carter v. United States (C. C. A.) 49 F.(2d) 221; United States v. Auer (C. C. A.) 51 F.(2d) 921; Sorvik v. United States (C. C. A.) 52 F.(2d) 406.

On the other hand, the subsequent employment may be of such duration, of such nature and so far free from interruptions due to disability that it will preclude the idea of totality. Nicolay v. United States (C. C. A.) 51 F.(2d) 170; Ford v. United States, supra.

It is not easy to define the line between those cases where subsequent employment will, and those where it will not, conclusively refute any claim of prior total disability, and I am prepared to admit that the case at bar comes close to the line. But it is the well settled rule of the federal court to resolve any doubts in favor of the veteran. White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530; Ford v. United States, supra; United States v. Phillips, supra; United States v. Godfrey, supra; McNally v. United States (C. C. A.) 52 F.(2d) 440.

In this circuit, the court has been especially liberal in dealing with cases involving the effect of employment after the lapse of the war risk insurance, and it is my opinion that the facts of the instant case may well bring it within the definition of total disability adopted in the Ford and in the Godfrey Cases.

In the latter case Judge Anderson made the following observation: "The evidence is persuasive that Godfrey was a war victim. He was entitled to the most favorable view of the evidence. * * * To hold him remediless because he tried, manfully, to earn a living for his family and himself, instead of yielding to justifiable invalidism, would not, in our view, accord with the treatment Congress intended to bestow on our war victims."

I deem Judge Anderson's observations peculiarly applicable to the case of Alvord. He clearly was a war victim who, despite his disabilities, and laboring under constant difficulties, has endeavored to support himself and his family by working when "yielding to justifiable invalidism" would have been better for him. To deny him the benefits of the insurance is, in effect, to penalize the veteran for his struggle to carry on since the war. Such injustice ought to be avoided, if possible.

In United States v. Auer, supra, the insured had worked 86 weeks, but received full pay for only 13 weeks, or about 15 per cent. of the time. In this case Judge Davis, speak-

ing for the Circuit Court of Appeals for the Third Circuit, remarked: "We think it cannot, in the light of this evidence, be said that he followed his occupation 'continuously,' or, as this word has been defined, 'with reasonable regularity.'"

I find and rule that the petitioner is entitled to a judgment for whatever amount may be lawfully due on the contracts. Judgment may be entered accordingly.