## EVEN–CUT ABRASIVE BAND & EQUIPMENT CORPORATION et al. v. CLEVELAND CONTAINER CO.

### No. 10593.

United States Court of Appeals
Sixth Circuit.

Jan. 17, 1949.

Albert R. Teare and Bates, Teare & McBean, all of Cleveland, Ohio, for appellants.

Albert R. Golrick and William F. Marsteller, both of Cleveland, Ohio (Albert R. Golrick, William F. Marsteller (of Baker, Hostetler & Patterson), and Horace B. Fay (of Fay, Golrick & Fay), all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

HICKS, Chief Judge.

The Cleveland Container Company (herein called Container) brought suit under Sec. 400 [now §§ 2201, 2202] of Title 28 U.S. C.A., against Even-Cut Abrasive Band and Equipment Corporation (herein called Even-Cut), assignee-owner of Reissue Patent No. 20,817—1938, to Maddox, seeking a declaratory judgment that the reissue was invalid. The complaint also sought to enjoin Even-Cut from making charges that the plaintiff infringed the reissue. The complaint further alleged that Container had a license under the patent through intervening rights, and that Homer Coe, the Manager of Even-Cut, and Rollin Bacher had been guilty of unconscionable conduct with reference to disclosures, which would deprive Even-Cut of any equitable relief against plaintiff.

In a second cause of action plaintiff asked that the patent be assigned to it because of the unconscionable conduct of Coe and Bacher.

The answer denied the invalidity of the patent and that any matters had been disclosed in confidence to Coe and Bacher, or that Container was entitled to the reissue. For counterclaim, Even-Cut sued Container for infringement of claims 3 and 4 and for an accounting.

The cause was sent to a Master, where Container conceded that it infringed claims 3 and 4, if they were valid. The Master concluded that these claims were invalid and that Container had established intervening rights. He further found that the

suit should be dismissed as to Coe and Bacher for lack of proof. He dismissed the counterclaim, disallowed costs to Coe and Bacher, and allowed Container costs from appellants.

The court sustained the Findings and Conclusions of the Master, and hence this appeal.

The issues presented here are,—(1) whether claims 3 and 4 are valid; (2) if valid, whether appellee had established intervening rights to the disclosure; and (3) whether appellants are liable for costs and expenses incurred in preparing the defense against the second cause of action which appellee purported to dismiss.

The reissue was for an abrading roll and a method of making it. According to the specification, the roll comprised "a hollow member or body portion, preferably formed of paper board * * * to which the abrasive material is firmly attached by some adhesive such as glue." The abrasive covering or sheet was "wound spirally of the roll so that the seams formed by successive convolutions will not produce any markings on the article being sanded."

The preferred form was similar in appearance to a mailing tube with the outer layer composed of spirally wound abrasive paper. It was claimed for this form that it was evenly balanced and could be mounted by inserting rotatable, tapered spindles at either end and could be operated at high speed and possessed resiliency and a cushioning effect theretofore secured by the interposition of felt or rubber between the abrading material and the base member of the roll. In its construction the support and the abrasive were integrally joined by the adhesive, and being of low cost it could be discarded by removing it from the spindles when the abrasive surface was exhausted.

The above mentioned claims 3 and 4 for a method and an article, respectively, are in issue, and as stated, infringement is conceded.

Claim 3 reads: "In a method of making a tubular abrasive element, the steps which consist in wrapping spirally upon a hollow mandrel an abrasive coated strip with the edges of adjacent convolutions in contact with each other, and securing said strip to said mandrel by interposing a layer of adhesive."

Claim 4 reads: "An abrasive element comprising a hollow cylindrical mandrel and a spirally wrapped abrasive coated sheet adhesively secured to said mandrel and completely covering the outer surface thereof, the convolutions of said sheet having adjacent edges in contact without overflowing" (sic).

*Article Claim 4.* We think that patent No. 681,636—1901, to Furber, is the best reference in the prior art. It discloses as a part of the machine a two-ply abrasive belt or band which operated over two pulleys as did one form of the commercial product of Container. The specification of Furber called it,—"A belt of abrasive material, such as sand or emery coated cloth or other flexible material * * * of any suitable construction. It is preferably composed of two strips or layers * * * of suitable textile fabric, cemented or otherwise secured together, each strip having diagonal ends which are *abutted together to form joints* * * * extending obliquely across the belt, * * * the said joints being at different parts of the belt, so that each layer extends continuously across the joint of the other layer. * * * This construction provides a strong and durable belt which is not liable to separate at the joints and is free from bunches or ridges thereat, *the oblique arrangement of the joints preventing liability of the displacement of the meeting edges of the joint of the outer layer by contact with the work.* * * *" (Italics ours.)

It is manifest from the specifications of both Furber and Maddox that each had two plies secured to each other by an adhesive and that where the edges of the outer layer came together they abutted each other and did not overlap and produce a bump on the band or roll. Furber brought the ends of the outer abrasive layer together diagonally, whereas Maddox abutted the edges spirally.

It is not material to determine whether the diagonal joint of Furber was the equivalent of the spiral joint of Maddox. In the prior art there were several patents for a sand-papering roller or buffing machine

which utilized the spiral wrapping of the abrasive material on a drum, notably, Patents Nos. 414,115—1889 to Kenyon; 906,-035—1908 to Kraemer; 732,796—1903 to Storm; 1,030,897—1912 to Lane; and 1,-469,307—1923 to Keltie. These wrappings were used upon permanent drums or rolls and were affixed thereto by mechanical means such as clamps, rather than by adhesives, but they conclusively show that spiral wrappings of abrasive material were known to the art and Kenyon in his specifications expressly stated that there should be no overlapping as the strip was wound spirally around the drum.

We think that Article Claim No. 4 is invalid. We do not consider it as a patentable advance to combine the spiral type disclosed by Kenyon, Kraemer, Keltie and others with the basic disclosure of the two-layered, cemented, abrasive belt of Furber. Both disclosures were in the buffing art and we think there was no invention in bringing them together in one article. Any good mechanic skilled in the art could have done that. Stockham Pipe & Fittings Co. v. Ohio Steel Fdry. Co., 6 Cir., 78 F.2d 111; Ohio Galvanizing & Mfg. Co. v. Mercury Mfg. Co., 6 Cir., 49 F.2d 895, 896. See also Hug v. Lakewood Engineering Co., 6 Cir., 7 F.2d 98.

Method Claim 3. This method claim called for wrapping spirally upon a hollow mandrel, an abrasive-coated strip, bringing the edges of adjacent convolutions in contact and securing them to the mandrel by a layer of adhesive. The Master found that these strips were identical with those employed for many years in the manufacture of spirally wound, multiple-ply tubes, and that no invention was involved in substituting an abrasive strip for the plain strip used as the outer layer or ply of such tube. He further found that the reissue patent failed to describe the method of manufacturing spirally wound, multiple-ply hollow abrasive tubes in sufficient detail to satisfy the statute. It is obvious that the method called for in claim 3 was for all practical purposes identical with that practiced in the paper tube art. Spiral wrapping, and the joining of successive layers by cement, paste, asphaltum or other adhesives have long been known in that art. Patent to Hurlbut, No.

441,846—1890; to Denney, No. 444,233—1891; to Angier, No. 1,242,903—1917; and to Reynolds, No. 1,299,031—1919. That a seam might be formed by abutting or overlapping edges was noted by Hurlbut. Angier spoke of forming a layer of a tube by winding a strip in helical form on a mandrel, "to present edges engaging along helical lines." And Reynolds in describing a method of making tubes by the employment of continuous strips of material, stated, "A strip is wound spirally upon a mandrel, and a second strip, having an adhesive applied to its face, is wound upon the first, covering the *contiguous* edges of the first strip" (Italics ours).

Spirally wound paper tubes were not in a remote art and a mechanic seeking to wind an inner layer of a tube with an abrasive would naturally look to such paper tubes for help. General Metals Powder Co. v. S. E. Wellman Co., 6 Cir., 157 F.2d 505, 510. In his specification, Maddox himself says, that for purposes of economy his body portion was preferably made in the form of a hollow cylinder of heavy paper or pasteboard, and his figure 2 discloses a spirally wound tube to which the abrasive material was permanently attached in sheet form by glue. And Ellis, whose patent No. 1,929,274—1933, was thrown into interference with Maddox's original patent and from which claims 3 and 4 of the reissue were taken, described a method of utilizing a paper strip manually "or by suitable machines" to form a spiral tube. If Ellis did this "by suitable machines" he was utilizing a well established art; and furthermore there was evidence that in 1930 Ellis purchased paper mailing tubes from a manufacturer which he clamped to a mandrel and wound with abrasive cloth and called the result an abrasive tube.

We conclude with the Master that claim 3 is invalid.

There is evidence that bands manufactured under the reissue were sold in considerable quantities prior to the war but commercial success will tip the scales in favor of validity only where there is doubt as to patentability. United States Gypsum Co. v. Consolidated Expanded Metals Companies, 6 Cir., 130 F.2d 888, 894. It is un-

necessary to consider whether Container had established intervening rights to the disclosure prior to the reissue.

■ The final issue is, whether Even-Cut is entitled to recover from Container the cost of preparation for the defense of the second cause of action against Coe and Bacher, which was deemed by the Master to have been dismissed by notice of Container under Federal Rules of Civil Procedure, Rule 41(a) (1) (i), 28 U.S.C.A. This matter requires a somewhat extended review.

The complaint was filed October 16, 1941, and as we have noted, included two causes of action, the second of which embraced a charge of unconscionable conduct against Coe and Bacher, and the first of which, contained in part charges similar to the second.

On July 23, 1943, before the reference, the defendants moved to dismiss the second cause of action for want of jurisdiction and also the first cause of action in so far as it related to the individual defendants Coe and Bacher. The motion was overruled by the court on January 19, 1944, on the ground that the question of infringement raised a question of ownership and that that issue should not be excluded in advance of the trial.

On January 9, 1945, long after the answer had been filed, and some eight months after the reference Container filed its notice of dismissal of the second cause of action without prejudice and asked leave to amend the complaint by striking the entire second cause of action, and by also striking the paragraphs and prayer of the first cause, which were concerned with the individual defendants. It does not appear that this motion was ever acted upon by the Master.

On January 18, 1945, the defendants filed an application for summary judgment on the second cause of action to include court costs, expenses and attorneys' fees on the ground that the notice of dismissal constituted a second dismissal, and under Rule 41(a) (1) of the Rules of Civil Procedure "operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States * * * an action based on or including the same claim." The motion was accompanied by an affidavit of Coe that at-

torneys' fees and expenses of some $12,000 had been incurred in defense activity attributable to the second cause of action.

Without going into the details of the alleged earlier dismissal, we note that the Master denied the motion on the ground that there was controversy as to the nature of the prior dismissal, the identity of the parties in issue and whether the dismissal was pursuant to "notice" or by entry made by the judge. However, the denial was made without prejudice to further consideration after the evidence had been heard. The Master commented that this was the third motion for a summary judgment, the first of which had been denied by the court, with the statement that the activities and negotiations of the parties were so complex that the court had concluded "that all the issues can best be determined at time of or after the trial."

Subsequently and before final hearing, defendants, under Rule 54, filed a further demand for judgment upon the second cause of action and for costs and attorneys' fees, on the ground that Container had voluntarily dismissed the second cause of action after defendants had been put to expense to meet the issues raised thereon. This demand was likewise denied without prejudice to its consideration when the evidence was in. At the conclusion of all the evidence defendants renewed their motions to dismiss the action as to Bacher and Coe for want of jurisdiction and for summary judgment.

On the matter of costs, the Master found (Finding 17): "That the proof fails to show that Homer Coe and Rollin L. Bacher are properly joined as Defendants and they are dismissed as Defendants from this suit. The expenses incurred through preparation for taking depositions and other expenses in regard to the defense for Coe and Bacher, were incurred as a part of the pleadings, preparation and trial in this case, and the other defendant, Even-Cut, was so involved that these total expenses were necessary in the preparation and prosecution of a defense for Even-Cut and Defendants Coe and Bacher. No proof was made or offered at the trial by Defendants, or any of them, as to any apportionment of such expenses as between Defendant Even-Cut and Defend-

ants Coe and Bacher. The second cause of action was dismissed by Plaintiff and Defendant's motion to have the cause of action dismissed was never ruled upon by the court or this Master as it became unnecessary. Therefore, no part of the costs asked for by Defendants Coe and Bacher by reason of the second cause of action are allowed."

The Master concluded that Container should recover the entire costs of the suit from defendants. He concluded that the second cause of action was dismissed by Container and that the court was not called upon to rule upon the motion of defendants to dismiss. This was a conclusion and not strictly a "Finding" and was error. Rule 41(a) (1) (i) states that an action may be dismissed by plaintiff without order of the court by filing a notice of dismissal "at any time before service of the answer." The answer was filed Dec. 6, 1941 and the notice on January 5, 1945. It was clearly ineffective. Defendants did not rest upon their rights. Three times they sought a ruling on the propriety of the second cause of action. They raised the question of jurisdiction prior to the reference to the Master and renewed it at the end of all the evidence.

The second cause of action against Coe and Bacher was for alleged fraud, based upon unconscionable conduct, and there was no diversity of citizenship.

On the question of proper adjudication of costs, we need not consider whether the independent cause of action against Coe and Bacher should have been dismissed for lack of jurisdiction [see French Renovating Co. v. Ray Renovating Co., 6 Cir., 170 F.2d 945] because it was considered to be dismissed by the court and Coe and Bacher are not now before the court.

Stripped of its complexities, our question simply stated is, whether Even-Cut should be charged with the cost incident to the independent action against Coe and Bacher. Container concededly had no case against them, and while it attempted more than once to dismiss, its efforts failed. But back of that, it brought the suit against Coe and Bacher for a cause of action which admittedly it did not have. Under general equity principles, it should pay the cost incident thereto.

The decree of the court in so far as it adjudged claims 3 and 4 of the reissue patent No. 20,817 to be invalid, is affirmed, but the cause is remanded with directions to determine the costs incident to the independent cause of action against Coe and Bacher, and when determined, to adjudge the same against Container.