HUMBLE v. UNITED STATES.

District Court, E. D. Kentucky.
Feb. 18, 1931.

Perry B. Miller, of Louisville, Ky., for plaintiff.

Sawyer A. Smith, U. S. Atty., of Covington, Ky., and George R. Brown, Jr., Regional Atty. for the Bureau, of Louisville, Ky., for the United States.

ANDREW M. J. COCHRAN, District Judge.

This cause is before me on final hearing. It is an action by a World War veteran on a war risk insurance policy. The plaintiff enlisted May 2, 1917 and was honorably discharged January 27, 1919. The policy was issued February 6, 1918, and the prescribed premiums were paid until July 2, 1928, when plaintiff ceased to pay same. The claim is that he was totally and permanently disabled when discharged, and hence that his policy then matured and he was thereafter under no obligation to pay any further premiums. It is not claimed that, if he was not then so disabled, he had become so at the time he ceased to pay premiums. The right to recover is based on the existence of total and permanent disability at the time of discharge.

The plaintiff landed overseas June 26, 1917. He entered the trenches at Bethelmont in October, 1917, where he remained ten days and was sent to St. Die and then to Cantigny. He was in the battle at that place May 28, 1918. Thereafter he was in the woods until the battle of Soissons beginning July 18, 1918, in which he participated. On July 22, 1918, whilst he was leading a squad consisting of himself and seven other men, he was gassed. The gas came from the explosion of a shell near by which killed the other seven men. It was chlorine and not mustard gas. As a result thereof he was put permanently out of service and returned to this country January 23, 1919, his discharge following immediately there-

after. He was awarded three service chevrons for gallantry and one for ———. As stated, the claim is that he was then totally and permanently disabled. This claim is based mainly on the claim that he was then suffering from active pulmonary tuberculosis. Some reliance is had on the effect of the gassing, but it is hardly claimed that, apart from the tuberculosis with which it is claimed he was then afflicted, he was so disabled. Nor can I make out that it is claimed that the tuberculosis was due to the gassing. Possibly it may have lowered his vitality and rendered him more subject to it. If, in fact, the plaintiff was then so afflicted, I think that it follows that he was then totally and permanently disabled. The question as to whether he was is to be determined as if this action had been brought immediately upon his discharge. If he was then so disabled, he was entitled to have payments under the policy to then begin and was not bound thereafter to continue payment of premiums to keep it alive, and if such payments were refused he was entitled to bring an action at once on the policy. Had he so done, the question as to whether he was so disabled would necessarily have been dependent alone on the facts that then existed. Subsequent facts could not be taken into consideration because they had not then happened. If such facts are entitled to be so taken here because they have happened before this action was brought, it can only be so for the light such facts throw on his physical condition at the time of his discharge.

So limiting myself, i. e. to his then physical condition, my conclusion is that if he was then suffering from active pulmonary tuberculosis he was totally disabled. He was incapacitated from following continuously any substantially gainful occupation. There can be, I think, hardly any question as to this. My conclusion further is that he was then permanently disabled within the meaning of the act. It was then impossible to say that the disease would not continue active for the rest of his life. The disposition of the case could not await subsequent developments to determine whether it would. Besides, the possibility that it might thereafter cease to be active and become arrested did not affect the permanency of the disability and that for two reasons. An arrested tuberculosis may become active again if the vitality is lowered—manual labor performed continuously and to the extent necessary to the success of a substantially gainful occupation is calculated to

lower the vitality—and plaintiff was adapted only to an occupation involving such labor. The other reason is that the act seems to contemplate that a total disability may at the same time be permanent so as to cause the maturing of the policy notwithstanding it may subsequently turn out that it may not be permanent in which case the payment of installments· of insurance should cease and the payment of premiums should be renewed to keep the policy alive. If this reasoning is sound, the disposition of this case· hangs on the question whether plaintiff was suffering from active pulmonary tuberculosis at the time of his discharge. In determining this question subsequent developments have a bearing.

The plaintiff made an application for compensation on account of his physical condition January, 1920, and he has been and is now drawing compensation. I want first to present the results of the examinations made by the Bureau through its physicians upon that application, in regard thereto. Question is made as to the admissibility of such evidence. It is thought that the fact that these examinations were made for compensation purposes renders the results thereof inadmissible in evidence in an action on an insurance policy. There is nothing whatever in this consideration affecting their admissibility. They are valuable in determining the truth as to plaintiff's physical condition. In the case of United States v. Golden (C. C. A.) 34 F.(2d) 367, 370 it was said:

"The doctors making the 'ratings' are of course competent witnesses, just as doctors examining for other purposes are; but it is their testimony that is competent, and not the Bureau's 'rating' predicated thereon."

The plaintiff was so examined on nine different occasions: September 6, 1922; January 5, 1923; August 3, 1923; October 24, 1923; February 13, 1924; July 31, 1924; November 26, 1924; February, 1925; and August 7, 1925. September 6, 1922, the diagnosis was chronic pulmonary tuberculosis, apparently arrested; January 5, 1923, the diagnosis, which was made by the same physician as the preceding one, was the same; August 3, 1923, it was chronic pulmonary tuberculosis, moderately advanced, quiescent; October 24, 1923, it was chronic pulmonary tuberculosis, active, moderately advanced; February 13, 1924, it was chronic pulmonary tuberculosis moderately advanced, quiescent, i. e. no present

signs of activity, hospitalization needed; July 31, 1924, the diagnosis here being made by the same physician who made that of October 24, 1923, it was chronic pulmonary tuberculosis apparently arrested; November 26, 1924, the diagnosis here being made by the same physician who made the preceding one, it was chronic pulmonary tuberculosis, apparently arrested; February, 1925, it was chronic pulmonary tuberculosis, quiescent; and August 7, 1925, which was an X-ray examination the disclosure was negative. Each of these examinations, except the last, covering a period of two and one-half years disclosed the existence of chronic pulmonary tuberculosis. On the first occasion as well as the others the disease was diagnosed as chronic, i. e. it had persisted over a period of time, i. e. for months. On the first two occasions it was diagnosed as apparently arrested; on the third as moderately advanced, quiescent; on the fourth as active, moderately advanced; on the fifth as moderately quiescent; on the sixth and seventh as apparently arrested and the eighth as quiescent. It will be noted that after having been diagnosed as apparently arrested and quiescent the diagnosis was active and then again apparently arrested and quiescent. On the basis of these examinations plaintiff was allowed compensation from his discharge, first to January 30, 1920 on the basis of 50 per cent. disability, and from that date to June 16, 1922, on the basis of total disability. Thereafter the award was substantially diminished until after the enactment of the amendment of July 2, 1926, since which time by virtue thereof he has received $50 per month.

The tendency of the testimony, without more, is to establish that, at the time of his discharge, plaintiff was afflicted with active pulmonary tuberculosis, which subsequently became arrested and quiescent, only to resume again its active form and then again to become arrested and quiescent.

The plaintiff himself testified that when he was gassed he was rendered unconscious; that he was picked up and carried to a first aid station, from thence to a field hospital, where he became conscious, from thence to a Red Cross Hospital in Paris, and from thence to a base hospital on the coast of France, where he remained until transferred to this country where he was shortly afterwards discharged; that since he was gassed he has coughed continuously, spit blood and had hemorrhages, run a temperature a great part of the time, had night sweats and had hardly any strength at all; that when he got

home he weighed 119 pounds, his normal weight being 140 pounds; that he hemorrhaged on his return and was sent to several tubercular hospitals in succession, first to Fairview Sanitorium, Normal, Ill., where he stayed for five or six days, then to a sanitorium at Madison, Wis., where he stayed something like two months, being, whilst there, placed in the tubercular ward, and then to the Old Soldier's Home Tubercular Sanitorium at Milwaukee, Wis., where he stayed something like three or four months, just when he was at these several hospitals not clearly appearing; that he had tried to work some, but was unable to continue at it; and that he has had hemorrhages off and on. Photostatic copies of reports covering the time when he was in the hospitals in France were introduced in evidence. They are in reduced form and difficult to read. I should not be expected to make out their contents. So far as I can make them out, their showing is rather against the seriousness of plaintiff's condition.

Three acquaintances testified on behalf of plaintiff. One testified that on his return from the army he was thin in flesh and appeared to lack strength and vitality; that he had a cough; that he was unable to do anything except little odd jobs. Another testified that on his return his health was very poor and he was weak; that he had seen him try to do carpentry work for his father and he appeared to be weak and sick and not able to work; that he had seen him sick at different times and at times he was not able to knock around; and that he did not look like he could do manual labor. The third one testified that he saw plaintiff in the spring of 1919 or 1920; that his condition as to health and strength appeared pretty bad, some days he would eat something and others he would not; that he hired plaintiff to carry water to the boys on the farm, but he had to quit because he could not hold out; that he had one hemorrhage and spit blood whilst threshing wheat; that he tried to help him while running a sawmill, but he started coughing and could not hold out.

His mother and father testified on his behalf. According to her testimony when he returned home he was in bad health, yellow, had no appetite, had hemorrhages and night sweats, and was down and out in every way. He had a hemorrhage the night he came home and very frequently thereafter had hemorrhages and coughed and spit blood. He was confined to his bed a good part of his time and when he did get up

and try to walk he was so weak he could not walk. He has continued to have night sweats. She frequently had to change his pillows and sheets and find blood sputum on them. According to his testimony, when plaintiff returned home he had a hacking cough and spit blood, was very thin and yellow. He never had any strength and but little appetite. He tried to help him as carpenter and painter and in the garden, but he could not hold out. His coughing, expectoration of blood, and weakened condition has been continuous. He had hemorrhaged within the last three months before the trial.

It is not unlikely that this nonmedical testimony is somewhat exaggerated, but it is substantially borne out by the showing of the medical testimony. My conclusion is that plaintiff was totally and permanently disabled at the time of his discharge, and hence is entitled to recover.