## LONG v. UNITED STATES.

### No. 3268.

Circuit Court of Appeals, Fourth Circuit.

June 13, 1932.

W. D. Workman, of Greenville, S. C., for appellant.

John M. George, Insurance Atty., U. S. Veterans' Administration, of Richmond, Va. (Joseph A. Tolbert, U. S. Atty., of Greenville, S. C., William Wolff Smith, Sp. Counsel on Insurance Claims, Veterans' Administration, Annabel Hinderliter, and B. Y. Martin, Attys. Veterans' Administration, all of Washington, D. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and WAY, District Judge.

PARKER, Circuit Judge.

This is an appeal in an action instituted on a policy of war risk insurance. The insured was discharged from the army on March 29, 1919, and paid no further premium on the policy, which, according to its terms, lapsed shortly thereafter. Recovery is sought on the theory that at the time of his discharge insured was totally and permanently disabled as a result of pulmonary tuberculosis and that this condition continued up to the time of the trial. The trial judge directed a verdict for the government and the insured has appealed. Two questions are presented by the appeal: (1) Whether there was sufficient evidence of total and permanent disability to take the case to the jury; and (2) whether the exclusion of the declarations of the insured contained on reports of examining physicians of the government and the diagnosis and prognosis entered by the physicians on these reports constituted reversible error.

On the first question we are of opinion that the action of the court in directing a verdict for the government was clearly right. Without analyzing the evidence in detail, it is sufficient to say that there was proof tending to show that insured was suffering from tuberculosis at the time of his discharge from the Army, and that he has suffered from same from time to time since, the disease

appearing to have been quiescent or arrested at times and active at other times. On the other hand, the evidence shows without contradiction that insured was regularly employed as storeroom keeper by the Piedmont & Northern Railway Company from November 15, 1919, to some time in January, 1930, a period of more than ten years, during which time he received wages amounting in the aggregate to $15,909.37. While there is evidence that at times during this period insured was assisted in the performance of his duties by other employees, the evidence is that he filled his position in a satisfactory manner and received two raises in wages and two bonus payments from his employer. In the face of such proof, the contention that the insured was totally and permanently disabled within any meaning which could possibly be ascribed to these terms is not one which reasonable men could accept; and under such circumstances the verdict was properly directed. As we said in United States v. Harrison (C. C. A. 4th) 49 F. (2d) 227, whether tuberculosis has resulted in total and permanent disability depends upon the facts of the particular case; but we do not think that evidence justifies a conclusion that such disability has resulted where it shows without contradiction that insured has worked continuously over a period of ten years. U. S. v. Wilson (C. C. A. 4th) 50 F. (2d) 1063; Nicolay v. U. S. (C. C. A. 10th) 51 F. (2d) 170; U. S. v. McGill (C. C. A. 8th) 56 F. (2d) 522.

■ On the second question, it appears that the insured offered in evidence the reports of government physicians who examined him from time to time in connection with his claim for disability compensation and made reports to the Veterans' Bureau as to his condition. The reports showed the physical findings of the physicians, their diagnoses of insured's ailment, their prognoses or opinions as to the probable cause of the disease, and their opinions as to the service origin of the disease and the extent of disability. The trial judge admitted in evidence so much of these reports as showed the physical findings of the examining physician, but excluded the remainder, and this exclusion is assigned as error. While we have held that entries on a tag, field medical card, and envelope attached to the clothing of a wounded soldier were admissible in evidence [U. S. v. Wescoat, 49 F. (2d) 193], and that self-serving declarations by an insured contained in reports made by examining physicians were not admissible [U. S. v. Wilson, 50 F.

(2d) 1063], we have not heretofore passed upon the question presented here as to the admissibility of the report of the examining physician so far as same relates to his findings as to physical facts, his diagnosis, his prognosis, and his opinions as to origin of disease and extent of disability.

So far as the report of an examining physician in cases of this character relates to physical facts and his diagnosis of insured's ailment, we think it should be admitted, either in behalf of the insured or in behalf of the United States, on the principles approved in the Wescoat Case, supra. It falls clearly within the principles under which exceptions to the hearsay rule are admitted; i. e., necessity and circumstantial guaranty of trustworthiness. Wigmore on Evidence, vol. 2, § 1420 et seq. and vol. 3, §§ 1630–1636. As to trustworthiness, it is made by an official of the government in the regular course of duty, who presumably has no motive to state anything but the truth, and it is made to be acted upon, and is acted upon, in matters of importance by officials of the government in the discharge of their duties. It is made, moreover, as a professional matter by a member of a learned and honorable profession in whom the sense of professional pride, as well as the sense of official duty, is conducive to truth and accuracy. While the diagnosis must necessarily rest partly upon statements made by the person examined as well as upon the observations of the examining physician, we think that such diagnosis in a report should be admitted on the same principle that would apply if the physician were testifying. The diagnosis is the opinion of a scientific expert who has examined the insured, heard his statements, and observed his symptoms. It approximates a statement of fact, being in reality what the physician observes when he views the insured with the trained eye of an expert. It gives meaning, moreover, to the statements as to physical facts observed, and serves as a check upon these statements, precluding the drawing of inferences therefrom which the physician did not intend.

As to necessity, these reports of examining physicians are made ordinarily by physicians of the Veterans' Bureau who are either not available as witnesses or whose testimony, if they are available, can be secured only at great trouble and expense. Moreover, their testimony when produced is ordinarily a mere recital of what is contained in their reports, to which they must look for the purpose of refreshing the memory; and

every one with experience in conducting litigation knows that as a matter of fact such reports are more reliable than the memory of the witnesses who made them, and that, if a witness without giving good reason therefor should contradict the statements contained in the reports, the reports would be accepted by any trier of facts in preference to the oral testimony. The examining physicians of the government examine hundreds of disabled soldiers. The written record of an examination made at the time is undoubtedly more trustworthy than the treacherous memory of a busy man dealing with many cases having many points of similarity. It is clear, therefore, not only that it is necessary as a practical matter that these reports be received if evidence is to be had of the matters to which they relate, but also that they are more dependable than would be the oral testimony of the witnesses who made them, and are, in reality, the best evidence obtainable as to such matters.

It is objected that the reports are not made under oath, and that there is no opportunity afforded for cross-examining the physicians when the reports are received. As to the first point, what we have said about the circumstantial guaranty of the trustworthiness is a sufficient answer. As to the second, it has no more force here than when asserted against the admission of any record entry. It is true that the diagnosis is an expert opinion, and thus differs from most entries as to facts; but, as stated above, such diagnosis approximates a statement of fact, and the report contains the facts and observations upon which the opinion is based, and thus furnishes the means by which the validity of same may be gauged, or by which it may be attacked if thought to be unsound.

And the reports, in so far as they relate to the observations and diagnoses of the examining physicians, are admissible on the further ground that they are public records made and preserved by public officials in discharge of duties imposed upon them by law. Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306; McInerney v. U. S. (C. C. A. 1st) 143 F. 729; Wigmore on Evidence, vol. 3, §§ 1630–1636.

The question as to the admissibility of these reports has been raised in a number of circuits, and the rule as stated is sustained by the decisions. Thus in Third Nat. Bank & Trust Co. v. U. S. (C. C. A. 6th) 53 F.(2d) 599, 601, it appeared that the reports of the physicians based on their examinations of insured had been admitted, although the self-serving statements of insured appearing thereon had been excluded. In sustaining this action, the court, speaking through Judge Moorman, said: "As the physicians themselves were not available as witnesses, we do not doubt that the findings were admissible in evidence under established exceptions to the hearsay evidence rule. The basis of these exceptions is that the obligation of the officer, coupled with his lack of personal interest, gives to his findings a sufficient guaranty of trustworthiness to admit them in evidence."

In sustaining the admissibility of the reports of examining physicians as to the findings of fact contained therein, the same court in U. S. v. Cole, 45 F.(2d) 339, 341, speaking through Judge Hicks, said: "Further, we regard these reports as exceptions to the hearsay rule. They were made by the examining physicians under the sanction of official duty and as and for a permanent record of specific facts to be kept in the files of the Bureau."

In Runkle v. U. S. (C. C. A. 10th) 42 F. (2d) 804, 806, Judge McDermott went into the matter very fully, and stated his conclusion as follows: "The statute contemplates that those claiming the benefits of the Act may have access to such reports. Such access would be of little avail to the claimants if the reports could not be used in court. Moreover, the statute contemplates use in court by subjecting them to the process of the United States court. Furthermore, the generous attitude of the government toward the beneficiaries of the Veterans' Act repels any idea of a desire to conceal any material fact from the veterans or their beneficiaries. Particularly is this true of findings of a physical examination. The standing of the doctors employed by the government is assurance of the integrity of their reports. In Gonzalez v. United States, 298 F. 1003, the district court required the government to produce for the examination of the plaintiff, in a war risk insurance case, such reports and records: In Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306, the Supreme Court held that the records of meteorological stations were admissible in evidence, such reports being of a public character, and made in pursuance of public duty. To the same effect, see McInerney v. United States (1 C. C. A.) 143 F. 729. It is our conclusion that, as far as material to the issues, the report of Dr. Maguire, if properly identified, is admissible." See, al-

so, McNally v. U. S. (C. C. A. 8th) 52 F.(2d) 440; Humble v. U. S. (D. C.) 49 F.(2d) 600; U. S. v. Stamey (C. C. A. 9th) 48 F.(2d) 150; McGovern v. U. S. (D. C.) 294 F. 108.

We think that the portions of the reports relating to the prognosis, the opinion of the physician as to the service origin of the disease, and his opinion as to the extent of disability were properly excluded. All of these matters related, not to the question of total and permanent disability which the court was trying, but to entirely different questions affecting the right to compensation. Runkle v. U. S., supra (C. C. A.) 42 F.(2d) 804, 806; McNally v. U. S., supra (C. C. A.) 52 F.(2d) 440, 443. So far as the prognosis is concerned, it might be observed further that there is no reason to accept an opinion given at a former date as to the probable course of a disease when its actual course has since been determined by experience, since the jury, in the light of that experience, are better able to judge of the matter than was the physician who rendered the opinion.

Our conclusion, therefore, is that there was error in the rulings complained of only in so far as they excluded the diagnoses of the examining physicians. And, as the admission of the diagnoses could not have affected the result of the case, since it would have been the duty of the judge to direct a verdict for defendant even if they had been admitted, the error in excluding them was harmless. The judgment below will therefore be affirmed.

Affirmed.