## UNITED STATES v. RENTFROW et al.
### No. 608.

Circuit Court of Appeals, Tenth Circuit.
July 18, 1932.

C. L. Dawson, of Washington, D. C., Atty., Veterans' Administration, and A. E. Williams, Asst. U. S. Atty., of Tulsa, Okl. (Jno. M. Goldesberry, U. S. Atty., of Tulsa, Okl., William Wolff Smith, Sp. Counsel, Veterans' Administration, and Thomas J. Williamson, both of Washington, D. C., Joseph V. Fitts, of Oklahoma City, Okl., and Bayless L. Guffy, of Washington, D. C., Attys., Veterans' Administration, on the brief), for the United States.

W. V. Pryor and Sam T. Allen, both of Sapulpa, Okl., for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

After a trial without a jury upon a war risk insurance policy, the court found specially that the insured was suffering from pulmonary tuberculosis when discharged from the service on July 12, 1919; that its progress was never arrested, and that his death on May 10, 1930, was a result thereof; and that he was permanently and totally disabled on July 12, 1919, while his policy was in force. Unless then matured, the policy sued on lapsed August 31, 1919. At the close of the evidence, the government moved for a judgment on the ground that the proof was not sufficient to justify recovery. This motion was denied, and a judgment entered for the administrator for the installments unpaid at the death of the insured, and for the beneficiary for the balance. Whether there was substantial evidence that the insured was permanently and totally disabled prior to August 31, 1919 is the question presented by this appeal. There was no substantial conflict in the testimony.

Dr. Calhoun testified that he served with the insured from October, 1918, until his discharge in July, 1919; that during that time the insured was not sick except with a cold and the flu, although he had a cough which the insured attributed to cigarettes. He did not see him thereafter until November, 1922, when an examination disclosed a temperature of 99.8 and a pulse of 102. He had lost weight between 1919 and 1922. The doctor's diagnosis was pulmonary tuberculosis; he advised that the insured go to a sanitarium or hospital; he testified that, if the insured had gone to a hospital or sanitarium at that time, he would probably have become an arrested case; that he did not believe that at that time insured's condition was permanent, if he followed the treatment prescribed.

Relatives and neighbors testified to the robust health of the insured when he enlisted, and to his listlessness, abnormal appetite, cough, shortness of breath, loss of weight, and incapacity for sustained physical effort, after his return from the Army. There is evidence that he commenced spitting blood in 1922. It appears that he worked at a grading camp in 1920 and 1921, and held down a regular job, but it was one generally given to old men. He left the job on account of illness. In 1922 he attempted to run a string of pipe for an uncle, but was unable to complete the

task on account of illness. He worked with a motion picture concern in 1920 and 1921, and received the regular wage of $36 a week. His role was that of a cowboy, and his work consisted largely of stunt riding; this employment was not steady, but he worked whenever work was available, until his employer went out of business. This work, while strenuous for the few minutes it lasted, did not require sustained physical effort. It appears that he applied for compensation in 1927, and in his application stated that he was partially disabled from 1920 to 1927, and that he had been engaged in farming from 1925 to 1927. There was also in evidence the usual record of "no disability" when discharged from the Army.

We are of the opinion that this case is ruled by the decisions of this court in Nicolay v. United States, 51 F.(2d) 170; Hirt v. United States, 56 F.(2d) 80; and Roberts v. United States, 57 F.(2d) 514. There is evidence sufficient to support the trial court's finding that the insured was suffering from pulmonary tuberculosis when he was discharged from the Army. There is no evidence, however, of the permanence of the disability. The only direct evidence on the subject is that of Dr. Calhoun, who testified that in 1922 his condition was not a permanent one, and that the disease would probably have been arrested if the insured had followed the treatment suggested. It is suggested by appellees that liability exists unless the evidence affirmatively discloses that the condition was not a permanent one. We are cited to Humble v. United States, 49 F.(2d) 600, 601, where the District Court allowed a recovery because it was "impossible to say that the disease would not continue active for the rest of his life." But the burden of proof is upon the plaintiff to prove that the disability was permanent, that is, "founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." This burden is not carried by leaving the matter in the realm of speculation. The proof in this case is that his disability in 1919 was not permanent; in addition to the direct evidence of Dr. Calhoun, it is a matter of common knowledge, as this court took occasion to say in Nicolay v. United States, supra, that many incipient tuberculars respond readily to the simple treatment of rest and nourishment, and are thereafter able to follow many gainful occupations.

Such cases as these, which are as frequent as they are unfortunate, make a strong appeal to the sympathies. An incipient tubercular stands at a crossroads: If he continues his ordinary activities, his condition is a hopeless one. On the other hand, if he will follow a program of complete rest and wholesome nourishment for an indicated period, the chances are strongly in favor of an arrested condition and a substantial cure. Many times the choice is a hard one, particularly when the economic circumstances of the insured are considered. But we cannot believe that liability upon these contracts of insurance should be determined by the conduct of the insured after the policy has lapsed, nor by economic circumstances which may influence that conduct. We can find no support, in this record, for a finding that the tuberculosis with which insured was afflicted had progressed to the incurable stage when his policy lapsed in August, 1919. For that reason, the motion of the government should have been sustained. For a strikingly similar case, see Eggen v. United States (C. C. A. 8) 58 F.(2d) 616.

We do not agree with the contention of the government that the subsequent employment of the insured was of such a nature and duration as to refute conclusively a claim of total and permanent disability, if there had been proof thereof, in the record. Storey v. United States (C. C. A.) 60 F.(2d) 484. The statements of insured, upon discharge and in his application for compensation, are evidentiary but not conclusive.

The cause is accordingly reversed and remanded for a new trial.

Reversed and remanded.