## PARRIGAN v. UNITED STATES.
### No. 1255.

District Court, E. D. Kentucky.
Nov. 3, 1933.

C. R. Luker, of London, Ky., and Robsion, & Sampson, of Barbourville, Ky., for plaintiff.

Mac Swinford, U. S. Dist. Atty., of Covington, Ky.

ANDREW M. J. COCHRAN, District Judge.

This action is before me on defendant's motion for new trial. It is an action on a war risk insurance policy. It was tried to a jury which found a verdict for plaintiff. The principal ground of the motion is that defendant was entitled to have the jury instructed peremptorily to find for the defendant. The

right to such instruction depends on whether there was substantial evidence before the jury to the effect that, at the time of plaintiff's discharge from the army, which was on November 21, 1919, he was totally and permanently disabled from following continuously any substantially gainful occupation. In order to recover, it is essential that he was then totally so disabled and that such total disability was permanent; i. e., would endure for the rest of his natural life. The burden was on plaintiff to establish that such was the fact by a preponderance of the evidence. This was a heavy burden in view of the fact that his action was belated. He refrained for over twelve years in asserting it. In the absence of any showing to the contrary, it should be taken that he knew that his policy provided for the payment of $10,000 in case of total permanent disability as well as of death. Such is the very first provision in it. That he asserted no claim under it for so long a time can hardly be accounted for save on the ground that he did not consider that he had been totally permanently disabled.

In the case of United States v. Linkhart (C. C. A.) 64 F.(2d) 747, 748, it was said: "While under the successive statutes enlarging the time wherein such actions may be brought the long delay does not of itself bar the action, it is a fact to be considered with all the other facts in determining, even upon appeal, whether there is substantial evidence to support the claim."

In the case of Keelen v. United States (C. C. A.) 65 F.(2d) 513, it was said: "This suit was brought on August 31, 1929, more than ten years after plaintiff's discharge from the service. During these ten years plaintiff neither paid premiums on his policy nor asserted claim under it. Under these circumstances plaintiff was under a heavy burden to 'show, by evidence contemporaneous with the life of the policy, the then totality and permanence of his disability as a fact existing and accepted, or * * * conditions then existing which, read in their own light and in the light of subsequent events, make it reasonably probable that, though then unclaimed and unrecognized, total and permanent disability did then in fact exist.' Wise v. U. S. (C. C. A.) 63 F. (2d) 307, 308."

■ The affliction relied on as bringing about the required disability within thirty-one days after November 21, 1919, the date of discharge, is tuberculosis. It is particularly hard to make out a case of such disability at such an early date where such an affliction is the ground for the claim of total permanent disability. It is not so hard to make out a case of total disability. If it is a case of active tuberculosis, as it usually is, the disability must be taken to be total. Such a case requires complete rest until the disease is conquered. The difficulty presented is in making out that the disability is permanent. This is so because in such cases usually, if not invariably, the disease is in its incipient stage, and whilst it is in such stage it is curable. It is a matter of common knowledge that such is the case. With nothing more to go on than the existing conditions at the time of the soldier's discharge, it is well-nigh impossible to make out that such incipient tuberculosis, though in an active stage, is a permanent condition. It can only be made out that such was the case by subsequent events. Subsequent events may make out that it is permanent, and hence they should be considered in determining the permanency of the disease.

In the case of United States v. Jones (C. C. A.) 65 F.(2d) 652, it was said: "What happens to-morrow may throw a white light on what exists to-day."

■ So it is that it is possible that, if a veteran waits for ten or twelve years before bringing his action, he may be able to recover, though if he had brought it shortly after his discharge he would have failed. Of course a delay to ascertain whether the affliction is permanent should not be counted against the veteran. But the fact that the disease has been of such a character as to totally disable the veteran for such a period of time, if it is possible for it to persist for so long without a fatal result, does not necessarily establish that the disability was permanent at the time of the discharge. That it has persisted so long may be due to the fact that the veteran has neglected to take proper treatment. If he has neglected to do so, it cannot be said that the persistence of the disease establishes that it was permanent at such time.

In the case of Wise v. United States (C. C. A.) 63 F.(2d) 307, 308, it was said: "It is undisputed that the condition of his shoulder and ankle could have been remedied by a comparatively minor operation. It certainly cannot be said that an injury which in its nature is alleviable by proper treatment is permanent, because many years afterward, no such treatment having been given, it still persists."

■ Though possibly, as a rule, it is more easy in such cases to establish total than permanent disability, it should be borne in mind that it is not sufficient to show that there is,

permanent disability at the required time. It must be shown that such disability is total.

In the case of Wilks v. United States (C. C. A.) 65 F.(2d) 775, 776, it was said: "Granted that when discharged from the army he had a disease which was certain to incapacitate him in the future, partially at first, and totally in time, such proof is insufficient. A condition of both total and permanent disability must exist before his policy lapsed."

In the case of Garrison v. United States (C. C. A.) 62 F.(2d) 41, 42, it was said: "As has been pointed out in a number of recent cases, the mere fact that a man has tuberculosis does not necessarily mean that he is totally and permanently disabled. The tuberculosis may not result in total disability, and, even if it have this result temporarily, unless the condition is such as to preclude the possibility of arresting the disease, it cannot be said that the disability is permanent."

The difficulty of making out a case of total and permanent disability at the time of the veteran's discharge may be brought out by certain statistics. In the six volumes of the 60 F.(2d)'s now out there are reported twenty-six cases where tuberculosis was relied on to make out such case. They are the following, to wit: U. S. v. Rentfrow (C. C. A.) 60 F.(2d) 488; U. S. v. McCreary (C. C. A.) 61 F.(2d) 804; Garrison v. United States (C. C. A.) 62 F.(2d) 41; U. S. v. Diehl (C. C. A.) 62 F.(2d) 343; U. S. v. Rosborough (C. C. A.) 62 F.(2d) 348; U. S. v. Peters (C. C. A.) 62 F.(2d) 977; U. S. v. Stack (C. C. A.) 62 F.(2d) 1056; U. S. v. Thompson (C. C. A.) 63 F.(2d) 111; Andrews v. U. S. (C. C. A.) 63 F.(2d) 184; Walters v. U. S. (C. C. A.) 63 F.(2d) 299, 301; Schmidt v. U. S. (C. C. A.) 63 F.(2d) 390; Mason v. U. S. (C. C. A.) 63 F.(2d) 791; U. S. v. Hodson (C. C. A.) 64 F.(2d) 119; U. S. v. Perkins (C. C. A.) 64 F.(2d) 243; U. S. v. Thomas (C. C. A.) 64 F.(2d) 245; U. S. v. Bass (C. C. A.) 64 F.(2d) 467; U. S. v. Howard (C. C. A.) 64 F.(2d) 533; U. S. v. Dunaway (C. C. A.) 64 F.(2d) 535; U. S. v. Linkhart (C. C. A.) 64 F.(2d) 747; Bailey v. U. S. (C. C. A.) 64 F.(2d) 779; Falbo v. U. S. (C. C. A.) 64 F.(2d) 948; McCleary v. U. S. (C. C. A.) 64 F.(2d) 1016; Meyer v. U. S. (C. C. A.) 65 F.(2d) 509; Le Blanc v. U. S. (C. C. A.) 65 F.(2d) 514; U. S. v. Jones (C. C. A.) 65 F.(2d) 652; Combs v. U. S. (C. C. A.) 65 F.(2d) 787. The plaintiff recovered in three only of these cases. They are the cases of U. S. v. Thomas (C. C. A.) 64 F.(2d) 245; U. S. v. Bass (C. C. A.) 64 F.(2d) 467; U. S. v. Jones (C. C. A.) 65 F.(2d) 652. The defendant succeeded in the other twenty-three. In three of these the case was left to the jury, and it found for the defendant. In the other twenty it was held that the defendant was entitled to a peremptory verdict. The trend against these tuberculosis cases can be made more emphatic by noting that in these six volumes there were altogether eighty-one of these war risk insurance cases, and plaintiff succeeded in twenty-seven of them. It is in the 50 F.(2d)'s that this trend first manifested itself. It so did in the case of Nicolay v. U. S. (C. C. A.) 51 F.(2d) 170, 173. This is the leading tuberculosis case. It was followed in those volumes by Nalbantian v. U. S. (C. C. A.) 54 F.(2d) 63; Hirt v. U. S. (C. C. A.) 56 F.(2d) 80; Roberts v. U. S. (C. C. A.) 57 F.(2d) 514; Eggen v. U. S. (C. C. A.) 58 F.(2d) 616; Long v. U. S. (C. C. A.) 59 F.(2d) 602. In each of these five cases a judgment for the defendant on a directed verdict was upheld. The only tuberculosis case in these volumes in which the plaintiff succeeded was that of McNally v. U. S. (C. C. A.) 52 F.(2d) 440. The tuberculosis cases cited in support of its holding were Mulivrana v. U. S. (C. C. A.) 41 F.(2d) 734; Malavski v. U. S. (C. C. A.) 43 F.(2d) 974; U. S. v. Meserve (C. C. A.) 44 F.(2d) 549; U. S. v. Phillips (C. C. A.) 44 F.(2d) 689. The Meserve Case was referred to as marking the limit beyond which no court has gone in the case of U. S. v. Perkins, supra. In that earlier day I slipped up in the case of Humble v. U. S. (D. C.) 49 F.(2d) 600, note of which was taken in U. S. v. Rentfrow, supra.

Concerning these tuberculosis cases in the 60 F.(2d)'s and 50 F.(2d)'s, referred to above, where the defendant succeeded, it should be mentioned that in many if not most of them there was a work record which bore heavily against plaintiff's claim that he had been totally and permanently disabled by the disease. There is no such record here. But these cases have a general bearing, in that they show that frequently the disease of tuberculosis does not totally and permanently disable its victim. In the Nicolay Case it was said: "It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations. On the other hand, there are some that do not respond to treatment, and their condition is incurable from the start. The burden of proof is upon the plaintiff; if his evidence leaves it a mere matter of specula-

tion as to the permanence of his condition in May, 1919, he cannot recover."

It is not important to say anything about the three tuberculosis cases referred to above where the plaintiff recovered, as they are not in point here.

■ This brings me to the case in hand. Here there is no question but that the plaintiff was afflicted with tuberculosis, probably in an active form, at the time of his discharge and whilst his policy was in force. The only question is as to whether by reason thereof he was then totally and permanently disabled from following continuously a substantially gainful occupation. Before his enlistment he worked on a farm during the summer and for the Louisville & Nashville Railroad Company during the winter. He had a common school education up to the eighth grade. His health was good. He enlisted February 25, 1918, and was discharged November 21, 1919. He embarked for Europe July, 1918, and was in certain offensives from July 28 to November 11, 1918. After this he was with the Army of Occupation. About April, 1919, whilst so engaged, he contracted a cough, lost weight, and had no appetite. He embarked for this country July 1, 1919, arrived at Camp Taylor near Louisville, Ky., some time in that month. Whilst being examined for discharge his cough was discovered, and he was sent to base hospital at Louisville. He remained there until August 1, 1919, and was then transferred to the tubercular hospital at McPherson, Ga. The cause of his transfer was that he had pulmonary tuberculosis. He remained there until November 21, 1919, when he was honorably discharged on a S. C. D. certificate. He at once returned to his home with his widowed mother in Laurel county in this district embracing about ten acres of land, and has continued to live there ever since, except about a year and a half. He married in May, 1924, and has a daughter. He was twice again hospitalized at government hospitals for tuberculosis. The first time was at Greenville, S. C., from October, 1921, to February, 1922, and the other time at Outwood, Dawson Springs, Ky., from April, 1926, to July, 1926. His testimony as to his physical condition except when so hospitalized and otherwise than as to his ability to work was confined mainly to the time of his transfer to the Georgia hospital, whilst there, and to the time of his discharge. As to this he said that he did not have much strength, was just sick, his breast hurt him, he coughed and spit, could not rest. He had night sweats very often, his cough was pretty bad, he spit blood and mucus.

This was not continuous. It would probably be two or three days before it would happen again. This condition kept right on until he was discharged. He continued coughing and spitting blood, felt weak, and breast hurt. Apart from this he merely said that he had grown worse since July, 1919. He took vocational training at Berea not far from his home, from April, 1924, to September, 1925. It is probable that it was during this time that he did not live at home as above stated. The training was for farming, specializing in poultry. It does not appear that he made any use of such training as he received. His testimony as to his working from the time of his discharge and when not hospitalized was that he had not been able to work regularly. Whilst taking vocational training he had to go home at times and rest and was not able to continue it. He had not been doing anything for a living since he quit training because not able. In addition to this testimony of his own, he introduced the diagnosis of his condition as made by Dr. G. S. Brock on behalf of the Veterans' Bureau February 19, 1920, June 20, 1921, and April 11, 1921, and the testimony of former neighbors, a cousin, and of Dr. J. W. Crook, his family physician. The diagnoses made by Dr. Brock were February 19, 1920, "Tuberculosis of the lungs, chronic quiescent," June 20, 1920, "Pulmonary Tuberculosis chronic," and April 11, 1921, "Pulmonary Tuberculosis, active, and advanced." The four neighbors testified that his health was good before he entered the army, and as to his condition on his return all testified that he was not able to and did no work. Further, one testified that he complained of his breast and cough and looked bad; another, that he was pale and swarthy looking, coughing and seemed in run-down condition and his physical condition since was poor; another, that he looked mighty weak; and another, that he did not look much healthy, looked pale and swarthy, and his condition since has been about the same. His cousin testified that on his return he was weak, looked bad, nervous, was coughing, had pains in his chest, and spit up blood, and that he slept with him one night when he rolled about all night, seemed very nervous, sat on bed and coughed and spit all night, and kept him awake practically all night. He testified further that since then up to the time of the training he looked bad, still coughed, and complained of being weak and nervous. Dr. Crook testified that he had treated him and his family for twelve or fourteen years; would see him possibly two or three times in some months and maybe oftener; other times

go for several months without seeing him; at times condition seemed favorable and at other times would flare up, be unfavorable, it would be active and he would be running a temperature; sometimes it would be quiet and he would not have any rise in temperature; he had been afflicted with pulmonary tuberculosis for twelve or fourteen years; he examined him a few days before the trial, and his temperature was 99⅖, and he thought it indicated some activity of his tubercular condition; his condition would continue; it depended on the way he is treated and how he treats himself, and that he had serious doubts whether he would ever recover.

This is in substance all the evidence introduced by the plaintiff. That introduced by the defendant consisted mainly of the diagnoses made by physicians of the Veterans' Bureau. Very shortly after his discharge in January, 1920, he applied for compensation, was awarded it, and has continued to draw it ever since. He received first $90 per month, then $67.50, then $45, and then $22.50. Whilst taking vocational training he received $135 a month. He was receiving $50 a month at the time of trial. It does not appear how long he had been receiving this amount, possibly since he quit taking vocational training. During all this time he was receiving compensation he was examined at different intervals by the physicians attached to the Veterans' Bureau. He was examined more than twenty times. The first examination was by Dr. G. S. Brock February 19, 1920, and the last by Dr. H. G. Lightner January 25, 1932. It is the diagnoses made on these occasions that defendant introduced in evidence. The three made by Dr. Brock have already been stated.

The others were as follows: March 17, 1920, by Dr. C. B. Neidhamer, "Tuberculosis Pulmonary, Chronic, apparently arrested." September 18, 1920, by Dr. C. B. Neidhamer, "Tuberculosis, Chronic, activity questionable." September 20, 1920, by Dr. John F. Scott, "Chronic Pulmonary Tuberculosis active." June 3, 1921, by Dr. John W. Scott, "Chronic Pulmonary tuberculosis, active incipient." August 2, 1921, by Dr. E. J. Murray, "Active chronic pulmonary Tuberculosis, moderately advanced." October 10, 1921, by Dr. J. D. Maguire, "Chronic Pulmonary Tuberculosis, active, moderately advanced." October 11, 1921, by Dr. John C. Lewis, X-Ray specialist, "Findings indicate tuberculosis, pulmonary, chronic, most marked in the upper part of the left lung. I think this is an active case." December 10, 1921, by Drs. W. H. Walters and James E. Dedman, at Green-

ville Hospital, "Tuberculosis, chronic, pulmonary, moderately advanced active." April 5, 1922, by Drs. Raibourn and James E. Dedman, at Greenville Hospital, "Tuberculosis, Pulmonary, chronic, quiescent." December 12, 1922, by Dr. John W. Scott, "Tuberculosis, chronic, pulmonary active." May 16, 1923, by Dr. R. W. Porter, "Tuberculosis chronic pulmonary, apparently arrested." November 1, 1923, by Dr. John C. Lewis, X-ray specialist, "Findings indicate tuberculosis, chronic, pulmonary, activity should be determined by physical and laboratory findings." November 15, 1923, by Dr. H. S. Chase, "Tuberculosis, chronic, moderately advanced, apparently arrested." March 6, 1924, by Dr. A. E. Williams, "Tuberculosis, pulmonary arrested." March 7, 1924, by Dr. H. S. Chase, "Tuberculosis, chronic, pulmonary, moderately advanced, arrested." December 22, 1925, by Dr. John C. Lewis, X-ray specialist, "Indicate Tuberculosis, chronic, pulmonary, From an X-Ray standpoint this is an apparently arrested case." December 22, 1925, by Dr. L. J. Godby, "T. B. Chronic, Pulmonary, Minimal, arrested." April 23, 1926, by Dr. John C. Lewis, X-ray specialist, "Moderate tuberculosis, chronic, pulmonary. The physical and laboratory findings should be considered in determining the activity." April 23, 1926, by Dr. R. W. Porter, "Tuberculosis, pulmonary, moderately advanced, active. Hospitalization recommended and re-examination in one year." May 17 and 18, 1926, by Dr. W. A. Hodges, at Outwood Hospital, "Tuberculosis, pulmonary, far advanced, active (a) improved." September 27, 1927, by Dr. L. J. Godby, "Tuberculosis, chronic, pulmonary, quiescent." March 28, 1928, by Dr. J. I. Taylor, "Pulmonary Tuberculosis, Minimal, apparently inactive." March 6, 1930, by Drs. H. G. Lightner, H. S. Chase, and O. H. McDonald, "Chronic pulmonary tuberculosis, arrested, minimal." January 25, 1932, by Dr. H. G. Lightner, "Chronic pulmonary Tuberculosis Minimal, apparently cured."

At all these examinations the sputum was found to be negative. In addition to these diagnoses, defendant introduced the testimony of Dr. L. G. Owsley, local physician at the place where plaintiff lived. He testified that on June 12, 1927, and a few days afterwards he treated plaintiff for acute diarrhea and again on January 3, 1929, and several days thereafter he treated him for influenza. On each occasion he examined him thoroughly and found no indication of tuberculosis and plaintiff made no complaint of having it.

Conceding that at the time of plaintiff's discharge he had active tuberculosis and by reason thereof he was then totally disabled, there was nothing then existing tending to show that the disability was then permanent, and subsequent happenings do not make out that such was the case. Their tendency, to say no more, is to establish that it was not permanent. The diagnoses of April 30, 1923, November 1, 1923, November 15, 1923, March 6, 1924, and March 7, 1924, made before plaintiff began to take vocational training, show that the disease was arrested. Those of December 22, 1925, after such training, show that the disease was still arrested. Those of April 23, 1926, just before he went to Outwood Hospital, and those of May 17 and 18, 1926, whilst there, show a recurrence of the trouble. But all the diagnoses made after that hospitalization show that the disease was arrested and that he was cured. That of September 27, 1927, was "quiescent"; that of March 28, 1928, "Minimal apparently inactive"; that of March 6, 1930, "arrested minimal"; and that of January 25, 1932, "minimal apparently cured."

In connection with these later diagnoses is to be considered the testimony of Dr. Owsley as to plaintiff's condition in June, 1927, and January, 1929. The effect of this is to establish that plaintiff's affliction at the time he brought his action and at the time of the trial had been cured. The testimony of Dr. Crook was of such vague character as to be of no real value. The testimony as to the inability to work given by himself and neighbors cannot avail as against it. That of his neighbors was not competent. U. S. v. Sauls (C. C. A.) 65 F.(2d) 886. Concerning such statements by the plaintiff, it was said in the case of Garrison v. U. S., supra, that they "are easy to make and hard to refute." He was drawing $50 a month on an average as compensation. Many persons will not work if they do not have to. Then by working he might jeopardize his compensation.

That there can be no recovery unless plaintiff is totally and permanently disabled at the time of trial was decided in Personius v. U. S. (C. C. A.) 65 F.(2d) 646. The defendant on this view of the case was entitled to a peremptory instruction. Certainly the verdict was against the weight of the evidence as to his condition at the time of the trial and defendant would be entitled to a new trial on this ground if no other. But there is a feature of this case which renders it inescapable that the defendant was entitled to such instruction. The plaintiff testified that, at the time he was discharged from the hospital at McPherson, Ga., he was advised to go to a hospital for tuberculosis at Oteen, N. C., and he refused to take this advice. His testimony was that the hospital physician advised the transfer, that he would not accept it, and that the Lieutenant Colonel in the ward in which he was said that he could not live six months if he came home, that he would go to work and could not stand it and would die right there, and advised the transfer to finish the complete treatment. Then again he left the hospital at Greenville against the advice of the hospital physician. In the report of Dr. James E. Dedman, senior surgeon at that hospital, of April 5, 1922, he answered "Yes" to the question "Do you advise hospital care?" and "No" to the question "Will claimant accept hospital care?" The plaintiff testified that he was not discharged from the hospital. In his statement to Dr. R. W. Porter, on his examination of May 16, 1923, plaintiff stated that "He went home on furlough and did not go back," and, in answer to the question as to whether he "Would accept hospital care," he said, "Not at the present on account of widowed mother and no one to stay with her." That this feature of the case is fatal to plaintiff's right to recover is upheld in the case of Walters v. U. S., supra, where it was said: "It is evident that, when appellant was discharged from the army, his tuberculosis was in the earlier stages. He was afforded every opportunity to receive adequate treatment without expense in government hospitals. While he frequently took advantage of such treatment, he always left these hospitals of his own accord, against medical advice. It was his duty to remain until cured or discharged as incurable."

The motion for a new trial is sustained.