## UNITED STATES v. PEET.
### No. 1440.

Circuit Court of Appeals, Tenth Circuit.
March 4, 1937.

Thomas E. Walsh, Atty., Dept. of Justice, of Washington, D. C. (Summerfield S. Alexander, U. S. Atty., and R. T. McCluggage, Asst. U. S. Atty., both of Topeka, Kan., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and Keith L. Seegmiller, Atty., Dept. of Justice, of Washington, D. C., on the brief), for the United States.

T. W. Bell, of Leavenworth, Kan., for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Peet brought this action against the United States on a policy of war risk insurance. The policy lapsed on March 1, 1919, for nonpayment of premiums unless on or prior to that date Peet became totally and permanently disabled.

On a former appeal we held the evidence failed to establish total disability and reversed a judgment in favor of Peet and remanded the cause for a new trial. United States v. Peet (C.C.A.10) 59 F.(2d) 728. On a second trial the lower court again found the issues of fact in favor of Peet and awarded judgment accordingly. The United States has appealed.

Prior to his service in the United States Army, which covered the period from September 17, 1917, to February 4, 1919, Peet worked in the coal mines as a

mule driver. While in the service he was wounded in the right foot and was confined in army hospitals from October 19, 1918, until his discharge. After his discharge Peet continued to receive treatment for the wound for a period of about three months. The wound healed, but a portion of the scar tissue adhered to the bone and this causes him inconvenience and annoyance and interferes with the normal movement of the foot. The injured foot is not as strong as a normal foot, and at times the muscles thereof involuntarily contract and cause pain.

Peet testified that since his discharge from the Army, he has suffered at times from a digestive disturbance. He colloquially referred to it as "stomach trouble," but there was no definite proof of any functional disorder of any abdominal organ except the gall bladder. He also testified he had to adhere to a restricted diet. At the first trial Doctor Smith, a witness for Peet, testified that Peet suffered a gall bladder attack in the early twenties. At the second trial Doctor Smith fixed the time of the gall bladder attack as 1923 or 1924. He further testified that the gall bladder trouble was caused by a stoppage of the common duct which carries the gall bladder secretions into the intestines; that the gall bladder condition caused the so-called stomach trouble; and that the attack above referred to yielded to treatment and after about ten days the gall bladder resumed its normal functions.

Peet worked in the coal mines from September, 1919, up to June 7, 1931, the day before the first trial. During the first four and one-half years he worked as a mule driver and thereafter as a coal miner. He stated that when the car got off the track he had to have the help of other employees to replace it, and that he was only able to mine one-third as much coal as the average miner. He further stated that he was not able to work regularly because of his physical infirmities. He earned $7.70 per day as a mule driver and about $1.65 per day as a coal miner during the days he worked as such. He earned $1,272.00 in 1920, $729.00 in 1921, $1,195.00 in 1922, $1,196.00 in 1923, and $230.00 in January and February, 1924. Peet's father testified that Peet worked practically every day the mine operated during the years 1920 to 1923, inclusive, and the months of January and February, 1924.

It seems clear to us that the foot injury while permanent did not constitute total disability and that the gall bladder ailment did not develop until long after March 1, 1919.

Furthermore, gall bladder ailments are frequently curable, either by treatment and diet, or surgery, and there is no proof in this record that the gall bladder condition is one that would not have yielded to treatment or surgery at its inception. In fact the proof indicates the contrary. See United States v. Ivey (C.C.A.10) 64 F.(2d) 653; United States v. Rentfrow (C.C.A.10) 60 F.(2d) 488; United States v. Harrell (C.C.A.10) 66 F.(2d) 231; United States v. McShane (C.C.A.10) 70 F.(2d) 991; United States v. Frost (C.C.A.9) 82 F.(2d) 152; Falbo v. United States (C.C.A.9) 64 F.(2d) 948.

Peet did not commence his action until January 29, 1929. He offered no evidence excusing or justifying this long delay. Such delay was, therefore, strong evidence that he was not totally and permanently disabled before the policy lapsed and cast a heavy burden upon him. Lumbra v. United States, 290 U.S. 551, 560, 561, 54 S.Ct. 272, 276, 78 L.Ed. 492; United States v. Mathis (C.C.A.10) 84 F.(2d) 451; United States v. Derrick (C.C.A.10) 70 F.(2d) 162, 164; Carey v. United States (C.C.A.10) 69 F.(2d) 766, 767. We are of the opinion that Peet failed to carry the burden of proof and that his evidence did not establish total and permanent disability on or before March 1, 1919.

The judgment is reversed and the cause remanded with instructions to grant the United States a new trial.

Reversed and remanded.